(No. 43610.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOSEPH BOMBACINO, Appellant.

*Opinion filed January 14, 1972.—Rehearing denied March 28, 1972.*

HARRY J. BUSCH and PATRICK A. TUITE, both of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and THEMIS N. KARNEZIS, Assistant State's Attorneys, of counsel,) for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

Following a jury trial the defendant was convicted in the circuit court of Cook County of voluntary manslaughter and was sentenced to the Department of Correction for a term of from one to five years.

The defendant was 16 years old at the time the offense of which he was convicted was committed. Delinquency petitions concerning this offense were filed charging him with being a delinquent child. Subsequently criminal charges concerning the same offense were filed against the defendant, and the State's Attorney petitioned

to remove the case from the juvenile division of the circuit court. The defendant objected and the petition was set for hearing, at which time arguments of counsel were heard but no evidence was offered. Following argument of counsel the court granted the petition, relying on section 2—7(3) of the Juvenile Court Act. (Ill.Rev.Stat. 1967, ch. 37, par. 702—7(3).) The defendant was later indicted along with John Cotton and Ross Rottmann for the murder of William Edyburn, whose death was the basis for the above delinquiency petitions and criminal charges. Rottmann was severed from the other two defendants and was tried separately and found not guilty. Subsequently the defendant and Cotton were tried together. Cotton was found not guilty and the jury found the defendant, Bombacino, guilty of voluntary manslaughter. This is an appeal from that conviction.

The defendant contends that the criminal division of the circuit court had no jurisdiction over him because section 2—7(3) of the Juvenile Court Act is unconstitutional. This section of the statute provides in part: "If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition."

The gist of the contention is that this section grants appellate powers to the chief judge of the circuit to review the decision of another judge of the same court. However, in the present case the judge presiding in the juvenile division did not object to the removal of the action and the matter was therefore not referred to the chief judge of the circuit court for decision and disposition as provided for in the statute. The defendant therefore lacks standing to challenge the constitutionality of this provision of the

statute because the same is not involved in this case and the defendant was not in any way aggrieved by this provision which he now claims to be unconstitutional. One who would attack a statute as unconstitutional must bring himself within the class as to whom the law is unconstitutional. *City of Chicago v. Lawrence, 42 Ill.2d 461, cert. denied 396 U.S. 39, 24 L.Ed.2d 208, 90 S.Ct. 263; People v. Hanke, 389 Ill. 602; Edelen v. Hogsett, 44 Ill.2d 215.*

Defendant further contends that the criminal division lacked jurisdiction because the judge in the juvenile division did not conduct a hearing on the petition to remove the case from the juvenile division. Defendant relies on *Kent v. United States, 383 U.S. 541, 16 L.Ed.2d 84, 86 S.Ct. 1045,* wherein the Supreme Court, in construing the District of Columbia Juvenile Court Act (DC Code (1961), sec. 11—914), held that the statute required a hearing before the juvenile court could waive jurisdiction and permit a minor to be prosecuted for a crime. The statute involved in *Kent,* however, vested the discretion to waive jurisdiction over the minor in the juvenile court. The Illinois statute does not give the same discretion to the court. Rather the State's Attorney in Illinois is vested with the discretion to determine whether or not to proceed criminally against a juvenile offender, subject only to the right of the judge presiding in the juvenile division to object, in which event the matter is referred to the chief judge of the circuit court for his decision. (Ill.Rev.Stat. 1967, ch. 37, par. 702—7(3).) Thus under the procedure established by the Illinois Juvenile Court Act the role of the judge is greatly diminished. *(People v. Jiles, 43 Ill.2d 145.)* Under our act a due process hearing as prescribed in *Kent* is not required at this stage of the proceeding.

On April 25, 1969, John Cotton, Ross Rottmann and Peter Krochmolny rode with the defendant, Joseph Bombacino, to the home of Scott Hagler at 900 N. Columbian in Oak Park. The defendant parked the car in the Hagler

driveway and the four boys went into the basement of the Hagler home where they remained for about an hour shooting pool and drinking malt liquor. The defendant then left the Hagler home in search of John Cotton and Peter Krochmolny who had left earlier. From in front of the Hagler home he saw a man walking on the sidewalk across the street. Thinking it was one of his companions he called to him. The man, William Edyburn, responded in a profane manner and came across the street to where the defendant was standing. Words were exchanged and soon blows were struck and Edyburn began beating the defendant. The defendant called for help from his friends and the stranger again crossed the street and ripped an antenna from an automobile which he used as a weapon to defend himself when he was attacked by the four boys. Rottmann went to the defendant's car and removed a baseball bat. Edyburn then ran down the street but was tackled by Cotton. The defendant took the baseball bat from Rottmann and struck Edyburn with it repeatedly about the head.

Soon thereafter police officers arrived on the scene. While talking to the defendant they heard moans coming from the bushes where they found Edyburn. He was taken to the hospital and subsequently died from his injuries. On learning that John Cotton had been with defendant, one of the officers went to the Hagler residence and asked for John Cotton. While talking to Cotton at the Hagler residence, the officer was informed that the automobile in the driveway belonged to the defendant. The windows of the automobile were open. The officer flashed his flashlight into the automobile and saw a baseball bat in the back seat with the small part of the bat on the floor and the fat part of the bat upright. There was a spot on the fat part of the bat which appeared to be blood. The officer was from two to four feet away from the bat when he saw it. He then opened the door, reached inside, and took the baseball bat from the automobile. Following a hearing the court denied the defendant's motion to suppress the

baseball bat as evidence. The defendant contends that taking of the bat constituted an unlawful search and seizure.

A man had been severely beaten and the officer went upon the Hagler property for the purpose of ascertaining the whereabouts of John Cotton whom he had been informed had been with the defendant. He was not on the Hagler premises for the purpose of conducting a search. While thus lawfully upon the premises in the performance of his duty to investigate the incident, he saw the baseball bat which was plainly visible from the exterior of the automobile. A search implies a prying into hidden places for that which is not open to view. Here there was no search. The officer having thus seen the baseball bat with what appeared to be blood thereon was authorized to take the same. Such a taking did not constitute an unreasonable seizure. *People v. McCracken, 30 Ill.2d 425; People v. Tate, 38 Ill.2d 184; People v. Davis, 33 Ill.2d 134; People v. Elmore, 28 Ill.2d 263.*

The defendant attaches importance to the fact that the officer could only see the bat by the use of his flashlight and cites *People v. Lind, 370 Ill. 131,* to support his position. In *Lind* there was without question an illegal search. The officers went to the defendant's residence without a search warrant for the purpose of searching the premises. While on the premises they went to the defendant's henhouse looking for stolen chickens. They had to open the doors of the henhouse before they could look into the building. Their conduct constituted an illegal search and the fact that they used a flashlight to explore the interior of the henhouse had no bearing on the illegality of the search. The use of artificial light to observe that which is in plain view has not been considered a fact which would alter the plain-view doctrine. *United States v. Lee, 274 U.S. 559, 71 L.Ed. 1202, 47 S.Ct. 746; People v. Pickett, 39 Ill.2d 88; People v. Wright, 41 Ill.2d 170.*

The defendant's case was removed from the juvenile court to the criminal court on May 13, 1969. He was

jointly indicted with John Cotton and Ross Rottmann for the murder of William Edyburn and was released on bond. On September 29, 1969, the defendant demanded trial. He was ultimately tried on February 24, 1970, 147 days after his demand for trial was made. Section 103—5(a) of the Code of Criminal Procedure (Ill.Rev.Stat. 1969, ch. 38, par. 103—5(a)) provides that a person in custody shall be tried within 120 days from the date he was taken into custody unless delay is occasioned by defendant. In 1969 the legislature amended paragraph (b) of section 103—5 which now provides that a person on bail shall be tried within 160 days from the date the defendant demands trial unless delay is occasioned by defendant. Prior to the 1969 amendment the time specified in this paragraph was 120 days, the same as applied to persons in custody. The defendant contends that the amendment to section 103—5(b) is unconstitutional because it discriminates against those who are placed on bond. We do not find it necessary to reach the constitutional question because the defendant had filed a motion for a severance from the other two defendants and on January 21, less than 120 days after the defendant first demanded trial, the court allowed the defendant's motion for a severance from Rottmann but refused to sever the defendant from Cotton for purposes of trial. This court has held that the granting of defendant's request for a severance tolls the running of the statutory period. *(People v. Lee, 44 Ill.2d 161.)* Accordingly a new statutory period began to run on January 21, 1970, and the additional 40 days added to the provisions of section 103—5(b) by the amendment in 1969 did not affect the defendant. Under the authority cited above in this opinion he lacks standing to challenge the constitutionality of the amendment to this section. *City of Chicago v. Lawrence, 42 Ill.2d 461; People v. Hanke, 389 Ill. 602,* and *Edelen v. Hogsett, 44 Ill.2d 215.*

At the close of the trial the People submitted, and the court gave, an instruction on voluntary manslaughter. The defendant contends that he was thereby denied his

constitutional rights to notice and to be indicted for the offense of which he was convicted. This same contention was raised and rejected by this court in *People v. Lewis, 375 Ill. 330.* We believe the holding in *Lewis* is dispositive of this contention. See also *People v. Korycki, 45 Ill.2d 87; People v. Wiggins, 12 Ill.2d 418, 426; People v. Crawford, 387 Ill. 616, 620; People v. Simmons, 26 Ill.2d 400, 402.*

The defendant contends that he was prejudiced by the State's Attorney's reference during the opening statement to the prior acquittal of Rottmann. Assuming, *arguendo,* that the comment was improper, the court immediately thereafter instructed the jury to disregard any reference to any previous trial and to consider only the evidence in this case. We do not see that the defendant was prejudiced by this one remark.

Defendant also objects to remarks made by the State's Attorney during the closing argument. However, it appears that no objections thereto were made at the trial and the defendant may not now complain thereof. *People v. Hampton, 44 Ill.2d 41; People v. Donald, 29 Ill.2d 283.*

Defendant's final contention is that he could not have been found guilty of voluntary manslaughter because there was no sudden and intense passion and in the alternative there was a sufficient cooling off period. He argues that under these circumstances he may have been convicted of murder, but not manslaughter. There was evidence of a severe altercation during which the decedent had punched, kicked and struck defendant with a car antenna, following which the defendant beat the decedent with a baseball bat. From the evidence the jury could properly conclude that the defendant was guilty of manslaughter and not murder. Under these facts we will not disturb the verdict of the jury. *People v. Harris, 8 Ill.2d 431.*

For the above reasons the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*