(No. 41566.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JOHN L. REESE, Appellant.

*Opinion filed March 20, 1973.*

ARTHUR H. GRANT, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and RONALD F. NEVILLE, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

The defendant, John L. Reese, and Joseph Steele, who is not a party to this appeal, were found guilty of rape after a bench trial in the circuit court of Cook County, and the defendant was sentenced to a term of not less than 4 nor more than 15 years in the penitentiary. When the court was subsequently informed that although there had been a stipulation that the defendant was 17 years of age, he was, in fact, only 16 years old, the court committed him to the Illinois Youth Commission. The defendant has appealed his conviction directly to this court.

At trial Geraldine Merriweather testified that at about 4:00 A.M. on October 8, 1967, she heard a knock at the front door of her apartment. She was in bed with three of her five children. She said she went to the door and when she asked who was there, someone answered "John."

Saying she knew no one named John, she returned to bed. At that, a panel of the door was broken open, the door was opened and two men entered the apartment, which was unlighted except for two candles burning in the bedroom. The men, one of whom had a black leather jacket over his head, came into the bedroom. Arthur, the prosecutrix's eldest child, who was seven years of age, asked them what they were going to do to his mother. The answer was that Arthur's father owed them $15, and they intended to "get it one way or another." Arthur ran from the apartment and apparently reached the door of the apartment upstairs, but he was brought back by the defendant. As the defendant did so, the jacket fell from his head and his face was exposed. Steele took $105 and some silver from the victim's purse and extinguished the candles. The prosecutrix testified that she had been close enough to the pair to permit her to identify them. She said that she had seen them in the building on previous occasions. She knew the defendant was called "Pee wee." She testified that they told her that if she did not cooperate with them or if she complained to the police, they would kill her and Arthur. At the time the defendant was holding Arthur by the neck. Then Steele had intercourse with her, and he later held Arthur by the neck while the defendant had intercourse with the victim. They then left, about thirty minutes after they had broken into the apartment. The prosecutrix said that she remained awake, that Gertrude Pleasant, the defendant's sister, who lived a floor above the victim's apartment, came down to see her at about 6:00 A.M., that they had a conversation concerning the attacks, that at about 6:30 A.M. the victim's mother came to the apartment. The police were then notified, and when they came, the prosecutrix was taken to the hospital and then to the building where she believed the defendant lived. The defendant was not there. The police drove the victim to her apartment and later returned with the defendant and Steele, having gotten the defendant's address from Ger-

trude Pleasant. They were identified by Arthur and the victim, but her testimony does not indicate whether she and the boy were together when they viewed them.

Arthur's testimony was substantially the same as his mother's. There was no challenge to his capacity to testify. He, too, had seen the defendant and Steele in the building on other occasions. Arthur did say the men had held him by his arm as well as his neck, and he testified that the attacks on his mother occurred on the floor and not on the bed, as his mother had said. He said his mother accompanied him to view the defendant in the squad car. Arthur said all of the children were present. His mother said two of her children were with relatives, and the children remaining with Arthur and her were 8 months and 18 months old.

Officer Don Degman testified that when he arrived at the victim's apartment at about 8:05 in the morning, he observed the broken door panel. After taking the prosecutrix to the hospital he drove her to a building where she believed the defendant lived. When the defendant was not found there he drove the prosecutrix to her home. He testified that the defendant's sister gave him the defendant's address, which is apparently the address of the building pointed out by the prosecutrix, or the one adjacent to it. Officer Degman found Steele and the defendant at the address where the defendant and other members of his family lived. He said he brought the defendant and Steele to the Merriweather apartment, where they were identified by Arthur and his mother. It appears from his testimony that the victim and the boy were not in each other's presence when they made the identifications.

The defendant, his parents, another sister and one of his brothers testified at the trial. The defendant said that he had been at home in bed from 12:30 A.M. to 8:30 A.M. on the morning of October 8, 1967. The testimony of the other defense witnesses indicated that he had been there at

1:30 A.M. and at 6:00 A.M., but no one claimed to have seen him in the interval between those times. There was some conflicting testimony as to the locks on the doors of the family apartment, who had keys to them and whether the defendant could have left the apartment during the night and returned later without someone in the apartment being made aware of his leaving and returning. There was also testimony that if the defendant had left the apartment during the night he would have had to crawl across his brother in the bed, open the door, causing a draft which, it was said, would have awakened his sister, and move his own trousers, which his father said he had folded on the defendant's bed the night before. The defendant's brother and his sister testified they had not been awakened, and his father said the defendant's trousers appeared not to have been disturbed during the night.

A delinquency petition was filed against the defendant before the juvenile division of the circuit court, but the case was removed to the criminal division when an indictment was returned against the defendant. The judge in the juvenile division did not object to the removal of the case. Ill. Rev. Stat. 1967, ch. 37, par. 702–7(3).

On this appeal the defendant submits that section 2–7 of the Juvenile Court Act (Ill. Rev. Stat. 1967, ch. 37, par. 702–7(3)), under which his case was transferred to the criminal division, is unconstitutional in that it violates the defendant's assurances of due process and equal protection; that he was not proved guilty beyond reasonable doubt; that his motion for a new trial was erroneously denied; and that he was denied his constitutional right to counsel at the time he was identified.

The section of the Illinois Juvenile Court Act (Ill. Rev. Stat. 1967, ch. 37, par. 702–7(3)) that the defendant claims is unconstitutional states:

> "(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted;

however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition. If criminal proceedings are instituted, the petition shall be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. Taking of evidence in an adjudicatory hearing in any such case is a bar to criminal proceedings based upon the conduct alleged in the petition."

There is no merit to the constitutional challenge. The complaints made by the defendant against the Act, and specifically against section 2—7(3), have recently been considered by this court and rejected. *People v. Bombacino, 51 Ill.2d 17, cert. denied, 409 U.S. 912, 34 L. Ed. 2d 173, 93 S. Ct. 230; People v. Handley, 51 Ill.2d 229; People v. Hawkins, 53 Ill.2d 181.*

The defendant, to support the claim that he was not proved guilty beyond a reasonable doubt, points to discrepancies between the testimonies of Arthur and his mother. The mother testified that she was raped on the bed. Arthur said the attacks occurred on the floor. Arthur said all of the children were present, but his mother said only three were at home. Arthur said his mother accompanied him when he identified the defendant in the squad car. While the victim did not testify on the point, it appears from the testimony of the police officer that Arthur was alone when he identified the defendant. The defendant also says other evidence was "unsatisfactory" or untrustworthy. He complains that the victim identified him, though the two candles which lit the bedroom had been extinguished, and he also notes that the police were not notified of the rapes until approximately three and one-half hours after the defendant and Steele supposedly left the apartment.

Courts of review have a special duty of carefully examining the evidence in rape cases. (*People v. Qualls, 21 Ill.2d 252.*) But in doing so the court may not encroach upon the function of the trier of fact to weigh credibility

and otherwise assess the evidence which was presented. (*People v. Springs, 51 Ill.2d 418.*) That evidence has been conflicting will not justify a reversal of a finding by the trier of fact. (*People v. Springs, 51 Ill.2d 418; People v. Hiller, 7 Ill.2d 465.*) A court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. *People v. Sumner, 43 Ill.2d 228.*

We do not consider that a reasonable doubt of the defendant's guilt appears upon a review of the evidence. The testimony of the victim was positive, and her identification was unhesitating. She and Arthur had seen the defendant on earlier occasions. The police observed the broken door panel about which she had testified. Under the circumstances of the attack, particularly considering the threat to her and her child, affirmative resistance to the rapes could not reasonably be expected. She did not rush out of the apartment to make an outcry when the men left, but the men had threatened to kill her and Arthur if she complained to the police. The record indicates she did not have a telephone, and the men might have remained in the building. When the defendant's sister came, the victim told her what had occurred. The victim's mother, it would appear, was summoned, and someone called the police. There was not any inappropriate delay in reporting the attack under the circumstances. We said in *People v. Garreau, 27 Ill.2d 388, 392:* "The time lapse between the complaint and the occurrence will naturally vary in accordance with the circumstances of each particular case and there is no definite limit of time within which the complaint must be made. *People v. Ristau, 363 Ill. 583.*" That the prosecution did not present medical evidence was not error. We remarked in *People v. Boney, 38 Ill.2d 23, 24:* "It is of course well established in this State that medical testimony is not required to prove a rape, and this is true even when it is established that the

victim went to a hospital after the crime occurred." What we said in *People v. Walcher, 42 Ill.2d 159, 165,* is applicable here: "This having been a bench trial, it was for the trial court to determine the weight and credibility of testimony and make a finding as to whether the guilt of the accused had been established. Its judgment should not be set aside unless the proof is so unsatisfactory as to cause a reasonable doubt of guilt to appear. The evidence is not unsatisfactory in this regard. *People v. Davis, 14 Ill.2d 196.*"

In the trial court the defendant called his father, sister and brother to support his motion for a new trial on the ground of newly discovered evidence. They testified that they had heard Arthur Merriweather rehearsing his proposed testimony with a police officer before trial. The officer was called to testify, and he denied that he had coached Arthur. Leaving aside any question as to whether the testimony met all of the standards for newly discovered evidence, we judge the trial court did not abuse discretion in denying the motion.

This court has said that to warrant a new trial the new evidence must be of such conclusive character that it will probably change the result on retrial. (*People v. Baker, 16 Ill.2d 364.*) Also, it has been observed: "Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and to show there had been no lack of diligence. The matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in case of manifest abuse." *People v. Holtzman, 1 Ill.2d 562, 569.*

The defendant errs in his contention that he had a constitutional right to counsel at the time he was identified following his arrest. In *Kirby v. Illinois, 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1881,* the Supreme Court said: "[I] t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."

Here there had been no adversary judicial proceedings begun against the defendant when the defendant was viewed by Arthur and his mother. The defendant had no right to counsel at that time.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*