THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DON OWEN RAHN *et al.*, Defendants-Appellants.

(No. 11674;

Fourth District—November 7, 1973.

CRAVEN, P. J., dissenting.

John F. McNichols, Deputy Defender, of Springfield, (J. Daniel Stewart, Assistant Appellate Defender, of counsel,) for appellants.

Walter F. Farrand, State's Attorney, of Virginia, (John A. Beyer, of Circuit Attorney Project, of counsel,) for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendants were each convicted of arson upon jury verdicts of guilty. Sentences imposed were: Wright, two to five, Hoke, three to ten and Rahn, three to ten. They appeal.

It is urged: (1) that Wright was not proven guilty beyond a reasonable doubt; (2) that it was error to deny Wright's motion for severance; (3) that the trial court erred in refusing to require the State's Attorney to file a petition requesting that Rahn, then 16 years old, be treated as an adult rather than a juvenile and in refusing to hold a hearing on whether Rahn should be treated as an adult, and (4) that the trial court erred in admitting evidence of another crime allegedly committed shortly prior to the arson.

Charges against defendants followed the burning of a church on the early morning of March 8, 1971. Investigation supported a conclusion of arson. On March 12, 1971, Wubker, a deputy sheriff, took statements from each of the defendants. No issue of the sufficiency of the *Miranda* warnings is raised. Defendants' statement in evidence through the testimony of Wubker coincide as to the fact that all defendants were driving about the countryside in Wright's truck drinking beer and whiskey.

The statements of Hoke and Rahn included admissions that they had carried a container of gasoline into the church, had "horsed around", and had spread the gasoline in the church and lighted it. They also admitted breaking the windows at the Hagener Town Hall prior to the activities at the church. As placed in evidence, the statements of Hoke and Rahn did not suggest that Wright participated at either the Town Hall or at the church.

The statement of Wright placed into evidence, coincides with that of Hoke and Rahn in that he was travelling in the truck in its wanderings. The truck was his, or provided by him. He stated that sometime after 10:00 P.M. they stopped at a gasoline station in Beardstown to purchase gasoline. He admitted that he and Hoke stole gasoline from a farmyard filling a one gallon gasoline can. This gasoline, or a portion of it, was carried into the church. Other evidence indicates that this farm

was about six miles from the church. Both Wright's statement to Wubker and his testimony at the trial is to the effect that at both the Town Hall and the church he was ill from drinking whiskey and beer and got out of the truck to vomit and to relieve himself. His statement indicates that he remembered hearing the breaking of glass at the Town Hall and seeing the church fire, but he remembered little else. He testified that he did not believe that Hoke and Rahn got out of the truck while he was vomiting in the church cemetery.

The times and places where Wright was driving the truck are not clearly stated. In rebuttal, Wubker testified that Wright had stated that the church was on fire when they left and that at the church Hoke and Rahn had said that they were going to light him and put him in the church.

The witnesses, White and Hickenbottom, testified that they taught at the Beardstown High School and that on the afternoon of March 8, 1971, Wright and Rahn spoke of the first and stated, "(T)hat was really something we did". At that time the witnesses had not taken the remarks seriously.

■■ It is urged that the court erred in permitting the testimony concerning another crime, i.e., the breaking of the windows at the Town Hall. No objection to such testimony was made at the trial, and the issue was not raised in either post-trial motion. Here, it is said that the testimony was "plain error" within the provisions of Supreme Court Rule 615(a). In *People v. Thompson*, 48 Ill.2d 41, 268 N.E.2d 369, it is said that objections to evidence may be waived by failure to interpose objections. There is, in fact, no prejudice to defendants. As to Wright, there is no testimony suggesting that he participated in the assault upon the Town Hall. Hoke and Rahn made statements which admitted starting the fire at the church. As to them a judgment of conviction will not be set aside where there is no evidence other than that of their guilt and the challenged evidence could not affect the verdict. (*People v. Douglas*, 130 Ill.App.2d 938, 267 N.E.2d 43.) Such evidence could have no reasonable effect upon the verdict. *People v. Black*, 52 Ill.2d 544, 288 N.E.2d 376.

■■ Wright contends that it was error to deny his motion for severance. The motion was founded upon the hypothesis that Hoke and Rahn had made confessions implicating him, and that such would be inadmissible hearsay. The proposition was not preserved in Wright's post-trial motion probably by reason of the fact that no hearsay testimony concerning the statements of Hoke and Rahn implicating Wright with the arson was placed into evidence. Wright admits travelling in his truck with Hoke and Rahn, and to being within the vicinity of the

church with them. We find no hostility in the interests of Wright and his co-defendants and no antagonistic defenses as in *People v. Johnson,* 13 Ill.2d 619, 150 N.E.2d 597. There was no abuse of discretion within the language of *People v. Lindsay,* 412 Ill. 472, 481, 107 N.E.2d 614, 619, wherein the rule is stated:

> "[W]here a motion for separate trial is made on the ground of *confessions of others implicating the defendant making the motion,* a severance should be ordered unless the state's attorney declares that the confessions or admissions will not be offered in evidence on the trial or unless there be eliminated from the confessions any reference to the complaining defendant." (Emphasis supplied)

Rahn was 16 years of age at the time of the fire. He urges that this conviction is void by reason of the failure of the State's Attorney to file a petition pursuant to Ill. Rev. Stat. 1969, ch. 37, par. 702—7(3). In the context of the argument, such petition is conceived to be a, "[P]etition to treat a juvenile as an adult offender". As a corollary the argument seems to require that a State's Attorney initiate a proceedings against a juvenile by filing a petition alleging delinquency, and thereafter a further petition alleging delinquency, and thereafter a further petition to treat the juvenile as an adult offender. Rahn argues that, "[A] reasonable interpretation of the statute requires that a petition be filed" by the State's Attorney. In *People v. Shaw,* 3 Ill.App.3d 1096, 279 N.E.2d 729, the court noted that there is no mandatory requirement that the State's Attorney file a petition alleging delinquency.

We note that Ill. Rev. Stat. 1969, ch. 37, par. 704—1(1) provides:

> "Any adult person, any agency or association by its representative may file, or the court on its own motion may direct the filing through the State's Attorney of a petition in respect of a minor under this Act."

It is in the context of such provision that one reads par. 702—7(3):

> "If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition."

In *People v. Jiles,* 43 Ill.2d 145, 251 N.E.2d 529, it was determined that there is no constitutional requirement that a juvenile court be created, or that a juvenile court determine whether a defendant be prosecuted as a juvenile rather than as a criminal. In *People v. Hawkins,* 53 Ill.2d 181, 290 N.E.2d 231 and *People v. Bombacino,* 51 Ill.2d 17, 280 N.E.2d 697,

it was held that the State's Attorney was vested with the discretion to proceed against a juvenile under the criminal statutes, that a juvenile court had no discretion to deny a motion to dismiss the delinquency proceedings and that a hearing on such a motion was not necessary. See also *People v. Handley*, 51 Ill.2d 229, 282 N.E.2d 131.

Those opinions distinguished the Illinois proceedings from those discussed in *Kent v. United States*, 383 U.S. 541, 16 L.Ed.2d 84, 86 S.Ct. 1045, wherein the statute created an exclusive jurisdiction in the juvenile court. There the cause was remanded because of procedural error under the statute.

■■ In *Jiles, Hawkins* and *Bombacino*, delinquency petitions had been filed and the issues arose upon the respective motions of the State's Attorney to dismiss the delinquency petition. Here, the criminal prosecution was initiated directly and no juvenile proceedings were pending. We conclude that the Supreme Court's statement of the discretion of the State's Attorney to proceed under the criminal statute is equally applicable where there is no initial delinquency petition and no hearing upon a motion to dismiss such petition under the several cases cited.

In this case, Rahn's counsel made an oral motion that the State's Attorney be required to file a petition under the Juvenile Court Act and then seek authority to proceed as an adult. The State's Attorney pointed out that Rahn did not waive indictment and requested a preliminary hearing. The trial court noted that proceedings by the grand jury developed the State's Attorney's determination to proceed as a criminal proceeding, rather than a delinquency proceeding. The motion of Rahn was denied with leave to file further definitive authorities within seven days. No such authorities were filed. The issue was not preserved in the post-trial motion.

The sufficiency of the evidence to prove Wright guilty beyond a reasonable doubt is essentially a question for the jury which heard him testify and observed him during the course of the trial. The credibility of Wright upon his testimony of disability at the critical time of the setting of the fire was to be considered in the light of the testimony of the two teachers in whose presence Wright joined Rahn in announcing that the fire was something that they did. The truck was provided by Wright and the gasoline can, so far as can be ascertained, was a part of the truck equipment. The evidence shows that Wright was fit enough to steal gasoline from the farmyard at a point five to six miles from the church. His statement to Wubker that Hoke and Rahn talked of putting him into the fire supports an inference that his participation was greater than is disclosed in his testimony, and is inconsistent with his description of

misery in the churchyard to the point that he was unaware of the activities of Hoke and Rahn.

■■ It has been determined that those cases pending on direct appeal on January 1, 1973, the effective date of the Uniform Code of Corrections, have not been finally adjudicated, and that as to those cases sentence is to be imposed under the Code. (*People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1.) The Code provides that arson is a Class 2 felony (Ill. Rev. Stat., 1972, Supp., ch. 38, par. 20—1(c)). The statutory term for a Class 2 felony is a minimum of not less than one year and a maximum of not more than 20 years, but the minimum imposed may not be greater than one third of the maximum. (Ill. Rev. Stat., 1972 Supp., ch. 38, pars. 1005—8—1(b)(3) and 1005—8—1(c)(3).) The terms of three to ten years imposed on Hoke and Rahn comply with the present statute. The sentence of two to five years imposed on Wright provides a minimum greater than one third of the maximum and must be modified. As modified, the minimum shall be a term of not less than one year eight months and a maximum of not more than five years.

The judgments of conviction are affirmed. The cause is remanded to the Circuit Court of Cass County with directions to issue an amended *mittimus* reflecting the modification of sentence as to the defendant, Wright.

SMITH, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN dissenting in part:

The majority opinion holds that a 16-year-old may be prosecuted as an adult without any proceedings whatsoever for removal of jurisdiction from the juvenile court.

Illinois Revised Statutes 1971, chapter 37, paragraph 702—7(1), provides in part:

> "Except as provided in this Section, no boy who was under 17 years of age or girl who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State    *    *    *."

While the majority opinion does not discuss, indeed does not even mention, this language, the opinion does refer to sub-paragraph (3) of the cited section. Such sub-paragraph relates to the statutory removal procedure. As I understand the holding of the court, absolutely nothing is required and no protection whatsoever is afforded a minor of 16 under the Juvenile Court Act if the state's attorney elects to proceed by way of indictment and trial of the minor as in adult felony matters. Thus,

the court holds that a state's attorney has absolute unfettered discretion to treat minors as adults and no removal procedure is necessary. No mention is made of the equal protection issues that necessarily follow by reasons of the varying procedures that may be employed in the 102 counties in this State with 102 state's attorneys.

Two cases in this State have addressed this issue. In *People v. Jiles,* 43 Ill.2d 145, 251 N.E.2d 529, Mr. Justice Schaefer, speaking for a unanimous court, said:

> "Under the Illinois Juvenile Court Act the juvenile and his attorney have an uncontrolled discretion to choose to be proceeded against in the criminal court. They may make that choice without regard to any considerations relating to the public interest, or even to the ultimate best interest of the juvenile. No judge has any authority to interfere with that choice. Under the statute a State's Attorney has a similar discretion to determine whether or not to proceed criminally against an alleged juvenile offender. His discretion, however, is not entirely uncontrolled. If the judge who hears the matter in the juvenile division objects to the removal of the case from that division, the matter is to be referred to the chief judge of the circuit for decision." (p. 149.)

In *People v. Shaw,* 3 Ill.App.3d 1096, 279 N.E.2d 729, the court stated:

> "The Juvenile Court Act simply makes a procedural arrangement so far as juveniles are concerned and specifically directs, at least by implication, that no criminal matters shall be undertaken as against a male infant between 13 and 17 years of age until after the recommended procedure in Section 702—7." (p. 1100)

In this case, the defendant Rahn was 16 years old at the time of the offense. Prior to trial his counsel requested that the prosecution make a matter of record the defendant's removal from jurisdiction of the juvenile court. It is no answer to the issue here to say the trial judge had an opportunity to object to removal and that he did not do so. The trial court expressly found that the state's attorney had absolute discretion and that he exercised that unfettered discretion by seeking and obtaining the instant indictment. There is no way that such can be construed as a failure to object by the trial court. Indeed, there is an express finding that once the state's attorney elects to proceed as in adult criminal matters, the trial court judge has no function whatsoever to perform with reference to the issue of removal. As I see it, such is clearly erroneous.

In 1899, the first Juvenile Court Act enacted in the United States was passed by the Illinois state legislature. The system thereafter spread to every state in the union, the District of Columbia, and Puerto Rico, although with wide differences and variables. (See *In re Gault,* 387 U.S.

1, 87 S.Ct. 1428, 18 L.Ed.2d 527, and particularly, Footnote 14.) As was noted by the court in *In re Carson*, 10 Ill.App.3d 384, 295 N.E.2d 740, the object and purpose of the Juvenile Court Act and the proceedings thereunder is to provide an alternative to the criminal prosecution and the severe penalties ensuing when the acts amounting to the alleged delinquent conduct would amount to a crime if charged as against an adult. The Juvenile Court Act in this State and in other states places emphasis on rehabilitation and corrective measures rather than the usual adult penology treatment and concepts.

The 1899 Illinois enactment endured with few changes from its original form until 1965. In 1965, the Act was substantially changed, but there is no indication whatsoever that there was a change in the original object and purpose. (See Trumbull, *Proposed New Juvenile Court Act for Illinois*, 53 Ill. Bar. J. 608 (1967).) In three cases—*Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; *In re Gault; In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368—the Supreme Court clearly manifests an intention to find a constitutional requirement of fundamental fairness and procedural due process in juvenile matters which the court sometimes found to be absent even though a benevolent intent was manifest in juvenile court legislation. In *Kent v. United States*, waiver or removal from juvenile court jurisdiction was at issue. There, the court considered a statute applicable to the juvenile court of the District of Columbia. The essence of the holding in that case is that a valid waiver of exclusive jurisdiction necessarily must be accompanied by the basic requirements of due process and fairness. See Schornhorst, *The Waiver of Juvenile Court Jurisdiction: Kent Revisited*, 43 Ind. Law. J. 583; Waiver in Juvenile Courts, 68 Colo. Law Rev. 1149; and Moundford and Berenson, *Waiver of Jurisdiction: The Last Resort of the Juvenile Court*, 18 Kan. Law Rev. 55.

The supreme court of Illinois in *People v. Bombacino*, 51 Ill.2d 17, 280 N.E.2d 697, *People v. Handley*, 51 Ill.2d 229, 282 N.E.2d 131, *People v. Hawkins*, 53 Ill.2d 181, 290 N.E.2d 231, and *People v. Reese*, 54 Ill.2d 51, 294 N.E.2d 288, concludes that a due process hearing as set forth in *Kent* is not required upon removal proceedings being instituted under the Illinois statute and limited *Kent* by reason of the fact that *Kent* was concerned with the statutory scheme of the District of Columbia. Thus, insofar as the application of *Kent* is concerned, a so-called "due process hearing" is not mandated by the Illinois statute as interpreted by our highest court. Indeed, in *Reese, Hawkins, Handley* and *Bombacino*, a delinquent petition was filed and removal was in compliance with our statutory provisions. In each of these cases it is noted that the state's attorney is vested with discretion to determine whether or not to proceed

criminally against a juvenile offender but that the judge presiding at the juvenile division has the right to object and thereafter further review by the chief judge. The majority opinion effectively eliminates any judicial function whatsoever, even including the power to object to removal. In so doing, the majority runs counter to *In re Gault* and *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647. Certainly removal of a defendant from juvenile court jurisdiction to criminal proceedings, wherein he is treated as an adult, is a critical matter for the defendant that cannot be based solely upon prosecutorial discretion. This court's approval of such procedure offends our statute, our decisions, and is the first case so holding since 1899.

I would reverse the conviction of the defendant Rahn for the deficiencies indicated and remand this matter to the circuit court of Cass County for further proceedings as required by law.

Defendant Wright was held accountable for arson under the provisions of Illinois Revised Statutes (1969), chapter 38, paragraphs 5—1, 5—2. The evidence in this case must prove beyond a reasonable doubt the following propositions in order to sustain the conviction:

> "(1) That defendants solicited, aided, abetted, agreed or attempted to aid another person in planning or commission of the offenses;
>
> (2) that this participation must have taken place either before or during the commission of the offenses; and
>
> (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offenses." *People v. Tillman*, 130 Ill.App.2d 743, 749, 265 N.E.2d 904.

At best, the evidence indicates that Wright in a drunken condition drove his truck, stole some gas when his truck began to "sputter", and used the cemetery next to a church in order to relieve himself. Although the evidence indicates that Wright knew that the church was on fire when the boys left, this knowledge alone would not be sufficient to constitute aiding or abetting within the meaning of the statute. The evidence falls short of proving affirmative acts necessary to render Wright a principal; thus, Wright's conviction should be reversed.