*In re* RONNIE TAYLOR, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* RONNIE TAYLOR, Respondent-Appellant.)

(No. 60293;

First District (5th Division)—November 14, 1975.

James J. Doherty, Public Defender, of Chicago (Thomas F. Finegan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM (Before Barrett, P. J., Drucker and Lorenz, JJ.):

Ronnie Taylor, 14 years of age, was charged in a delinquency petition with the murder of Thurmond Branick in violation of section 9—1(a)(2) of the Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, par. 9—1.) The trial judge entered a finding of delinquency based on the charge of murder. On May 17, 1973, the trial judge conducted an evidentiary hearing on respondent's motion for a new trial based on alleged newly discovered evidence, denied the motion and committed respondent to the Department of Corrections, Juvenile Division, until he attained the age of 21 years, or until sooner discharged by order of court.

The sole issue on appeal is whether the trial court erred in denying respondent's motion for a new trial based on newly discovered evidence.

In order to evaluate the alleged newly discovered evidence as a basis for a new trial it is necessary to summarize the evidence at the trial in which the judge entered his finding of delinquency.

It was stipulated that Thurmond Branick died on April 5, 1973, and that the cause of death was a gun shot wound to the chest and heart.

WITNESSES FOR THE STATE:

Police Officer Anramo testified that on direction he went to the third floor of the building at 1111 West Roosevelt Road and saw a young man lying on the walkway. After talking to a crowd of persons at the scene he arrested respondent. He further testified that respondent told him he shot Branick and had thrown the gun used in the shooting over the railing on the 4th or 5th floor as he ran to his mother's apartment on the 10th floor. He further testified that when he arrived at the scene he did not observe any guns or pistols.

Police Officer Schwartz testified that he was present when respondent gave a statement to Assistant State's Attorney Simkin. The statement was admitted in evidence. In it respondent admitted he fired at Branick, but was not sure he hit him.

John Brown, Jr., the only witness to the incident, testified as follows: At approximately 12 noon on April 5, 1973, he arrived on the 3rd floor of 1111 West Roosevelt Road to visit his sister. He observed two boys near the incinerator near Apartment 307 and saw respondent with a gun pointed at Branick's chest. He saw the gun fire and saw Branick tumble to the floor toward him. He remembers seeing only one gun and only one shot was fired. He observed Branick's hands and he did not have a gun. No one else was present at the time of the incident. He did not know Branick or respondent or any members of their families.

After respondent's motion for a directed verdict was denied, five witnesses were called by the respondent. The testimony of Maurice Dean, an investigator for the office of the Public Defender, and the testimony

of respondent's mother was inconsequential as to the basic merits of the case.

Earl Johnson testified that he lived in Apartment 307 at 1111 West Roosevelt Road; that he knew both Branick and respondent. On April 5, 1973, he, Branick, respondent and others were together in the building. He, Branick, respondent and one, Steve, went to his apartment, number 307. Branick and respondent left the apartment. At Steve's suggestion he looked out the door and saw Branick and respondent on the porch. Branick had a gun, but respondent was behind a wall and he could not see him. He heard respondent say to Branick, "Get out of my face." He ran to get his mother, but before he could get back he heard a shot. He recognized the gun Branick had as one he had previously seen in the possession of one, Sandy Haywood.

Anthony Wheeler, also a resident of the building, testified that on April 4, 1973, he saw respondent at about 5:30 P.M. in the building at 1111 West Roosevelt Road. As he and respondent were on their way to his apartment they were stopped by Branick and Sandy Haywood. Branick pulled out a gun and handed it to Sandy and said, "We should kill you both." He was frightened. He thought both he and respondent would be killed. Respondent's mother arrived. Sandy put the gun in his coat and he and respondent went to the Taylor apartment.

Respondent testified in his own behalf as follows: While on the 3rd floor of the building on April 5, 1973, he and Branick continued the feud that started the day before. He told Branick "to get out of my face." Thereupon, Branick pulled out a gun, aimed the gun at him, pulled the trigger, but the gun did not fire. He then pulled out his gun, which he said he had borrowed from a friend, pointed it at Branick and fired it, but wasn't sure he hit him.

On the motion for a new trial, the trial judge held an evidentiary hearing and respondent presented two witnesses; namely, Carl Winfrey and Cardell Walker. Their testimony was essentially the same, as follows: Between 12 o'clock noon and 1 o'clock in the afternoon they were in Apartment 1210 at 1111 West Roosevelt Road. After they left the apartment and were walking down the walkway they heard a shot. They hesitated for a few minutes and went down to the 3rd floor where they saw a young man lying on the walkway near Apartment 309. He was lying on his stomach and his body was facing the door. They thought the person whom they identified as Branick was intoxicated and so they raised him up and there was a gun underneath him. They had a clear view of a black .25 automatic gun. After they saw the gun they put Branick down and then they went to the Fire Department on the 1st floor of the adjoining building to get help. It took them from 10 to 15 minutes to descend from the 12th floor to the 3rd floor. They did not give a state-

ment to the police because at the time they thought the boy was still alive.

Respondent argues that the trial court should have granted his motion for a new trial based on the newly discovered testimony of Carl Winfrey and Cardell Walker. The State contends that the testimony of Winfrey and Walker was not of such a conclusive character that it would change the result at a new adjudicatory hearing and that their testimony was merely cumulative of the same facts testified to by respondent and respondent's other witnesses. We agree with the State.

■■ By the denial of the motion for a new trial, the trial judge necessarily found that the testimony of Winfrey and Walker added nothing which, if presented at the trial, would have changed his finding of delinquency. We agree.

We feel it interesting to note that there is no testimony in the record that when Branick's body was removed that a gun was found under his body nor is there evidence in the record that the gun testified about by Winfrey and Walker was ever found.

■■ An application for a new trial on the grounds of newly discovered evidence is addressed to the sound discretion of the trial court. (*People ex rel. Walker v. Pate,* 53 Ill.2d 485, 292 N.E.2d 387.) The exercise of this discretion will not be disturbed except in case of manifest abuse. (*People v. Holtzman,* 1 Ill.2d 562, 569, 116 N.E.2d 338.) Applications for a new trial on the grounds of newly discovered evidence are looked upon with disfavor by courts and are subject to very close scrutiny. In *People v. Reese,* 54 Ill.2d 51, 294 N.E.2d 288, the court cited with approval the following language from the *Holtzman* case (54 Ill.2d 51, 59):

> " 'Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and to show there had been no lack of diligence. The matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in case of manifest abuse.' "

Since respondent has limited his appeal to the issue of whether the trial court erred in denying the motion for a new trial on the ground of newly discovered evidence, the judgment of the trial court is affirmed.

Affirmed.