THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARRELL CARTER, Defendant-Appellant.

Third District   No. 3—85—0473

Opinion filed August 7, 1986.

Jeffrey D. Foust, of State Appellate Defender's Office, of Springfield, for appellant.

Edward Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

Defendant, Darrell Carter, was charged with conspiracy to commit murder and murder. A jury convicted him of both offenses. He was sentenced to 20 years only on the murder charge. He brings this appeal. We affirm.

Defendant was charged, with codefendants Gerald Chamberlain and Norman Gates, with the conspiracy to murder and the murder of John Thomas. The evidence against defendant consisted of his statement to the police, various statements by codefendants to the police, and the statement of one of defendant's cell mates in the Will County jail. In a conversation with the police, defendant stated that the victim was a friend of his. Defendant stated that he, the victim, and the codefendants were in the victim's car. The victim was driving. On the way to codefendant Gates' girlfriend's home, the victim stopped the car to check the trunk lid. As he re-entered the car, codefendant Gates shot him. Defendant stated that he knew something was going to happen to the victim; he did not know what it would be.

Codefendant Gates' statement was also used as evidence against defendant. He stated that Gerald Chamberlain and defendant were planning the death of the victim. Gates' story essentially matched that of defendant's. However, Gates stated that he only shot the victim once; Chamberlain fired another shot at the victim. Chamberlain's case was severed but Gates and defendant were tried together.

Ronnie Harris also testified against defendant. He stated that he was in the Will County jail at the same time as defendant. Defendant stated that defendant and the codefendants had planned to commit the murder of John Thomas because the victim owed money for some drugs. Defendant's story in the jail was that the victim was shot once by Gates, and defendant took the gun and shot the victim again.

Harris was testifying pursuant to an agreement with the Will County State's Attorney. Harris had two armed-robbery charges pending against him. Pursuant to the agreement, the armed-robbery charges would be reduced to robbery. Harris was to receive three years' imprisonment for his guilty plea on the robbery charges.

Other evidence admitted at trial was that defendant and the codefendants were found in the victim's car. A .45-caliber pistol was found in the car. The registration of the victim's car and a warning citation issued to the victim were found in defendant's wallet on his arrest.

Defendant testified on his own behalf. He stated that Gates had killed the victim. He also stated that he had not participated in any plans to kill the victim. After the killing, Gates threatened to kill defendant. He also stated that he did not tell Ronnie Harris that he had shot the victim. He explained his statement that he knew something was going to happen by saying he thought there was going to be a fist fight or something to that effect.

Codefendant Gates also testified. He stated that he and Chamberlain were members of the Vice Lords street gang. Gates had withdrawn from the gang. Chamberlain had a position of power in the gang and threatened Gates' life for not "representing" the gang any longer. Chamberlain had given Gates the gun. While they were in the car and the victim was out of the car, Defendant and Chamberlain discussed how to "fuck [the victim] up." Gates felt compelled to shoot the victim because of Chamberlain's presence and the threat on his life.

The jury convicted defendant of both charges. His post-trial motions were denied. He was sentenced to 20 years. He appeals.

■■ ■ Defendant's first claim on appeal is that the trial court erred in not granting defendant's motion for a severance. Generally, defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349.) The decision rests in the discretion of the trial judge. It will be reversed only on an abuse of the court's discretion. (109 Ill. 2d 80, 485 N.E.2d 349.) Defendant raised two issues in his motion. The first we shall examine is whether the defenses of the codefendants were antagonistic. The basis for the claim of antagonism is that Gates' compulsion defense conflicted with defendant's. Defendant likens this case to one where the antagonistic defenses "produced a spectacle where the People frequently stood by and witnessed a combat in which the defendants attempted to destroy each other." (*People v. Braune* (1936), 363 Ill. 551, 557, 2 N.E.2d 839.) We do not believe that defendant has presented

such a situation. Defendant's theory apparently was that he knew some type of action was going to be taken against the victim. Gates' theory was that he was compelled by Chamberlain's position of power in the gang and the death threat. There was not the obvious risk of prejudice inherent in the case that the trial judge has to find in making his prediction about the likelihood of prejudice at trial. *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.

■ Defendant's other ground for a severance was that the confession of codefendant Gates would have violated his constitutional right to confront the witnesses against him. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) The State claims that no *Bruton* problems existed due to the fact that Gates testified. However, in reviewing a motion for severance, courts of review do not consider the subsequent happenings at trial. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 545, 468 N.E.2d 969.) Therefore, we are unable to decide the issue on this basis.

The trial court apparently based its decision on the plurality holding of *Parker v. Randolph* (1979), 442 U.S. 60, 60 L. Ed. 2d 713, 99 S. Ct. 2132. The plurality of the Supreme Court held that admission of interlocking confessions with proper limiting instructions conform to constitutional requirements.

■ Defendant's various statements correspond in many important respects with codefendant Gates'. In his statements to Harris, defendant completely inculpated himself. He also admitted to having knowledge of some form of action being taken against the victim. Gates' statement claimed that defendant knew of the plan to kill the victim. On either evidence, the conviction would have been proper. As such, defendant was not prejudiced by being jointly tried with a codefendant where both have admitted participation in the crime and where their defenses are now shown to be antagonistic. *People v. Williams* (1985), 136 Ill. App. 3d 126, 483 N.E.2d 306; *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136.

Defendant, though, claims that the recent Supreme Court case of *Lee v. Illinois* (1986), 476 U.S. ___, 90 L. Ed. 2d 514, 106 S. Ct. 2056, controls the present situation. We do not agree as the facts of *Lee* make the case distinguishable. The codefendant's statement in *Lee* was admitted as substantive evidence against Lee. The trial judge expressly considered the codefendant's confession against defendant Lee. Neither defendant testified. Therefore, it was only on the basis of the codefendant's statement that Lee was found guilty. The present situation is not similar. We therefore decline to read *Lee* to apply to the present situation, and find no abuse of discretion in the denial of

the motion.

Defendant also challenges the verdicts of guilty, claiming that the evidence failed to prove him guilty beyond a reasonable doubt. We will only reverse the conviction if the evidence is so improbable as to raise a reasonable doubt as to the defendant's guilt. It is the function of the trier of fact to determine the accused's guilt. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Where the credibility of witnesses is an important factor, the proper weight to be given the testimony is the function of the jury. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230.) The trial court will not substitute its judgment for that of the trier of fact. *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

The evidence against defendant supports the jury's conclusion of guilt. Harris testified that defendant admitted to participating in the murder. Gates stated that the defendant was in on the plan to kill the victim. Defendant's testimony was that he had no knowledge of any plan and that he did not participate in the murder. The essential question, for the jury to decide, was defendant's participation in and knowledge of the murder. The trier of fact is not bound to believe the defendant's testimony against the State's evidence when there is a conflict. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) We therefore hold that the evidence was sufficient to support the jury's verdict of guilt.

Defendant's final contention, an error confessed by the State, is that the conviction for the inchoate offense should be vacated in light of the conviction for the principal offense. The conviction for conspiracy to commit murder should have been vacated upon the conviction for murder. (*People v. Hill* (1980), 78 Ill. 2d 465, 401 N.E.2d 517.) Accordingly, we hereby vacate defendant's conviction for conspiracy to commit murder.

Therefore, defendant's conviction for murder is hereby affirmed. The conspiracy conviction is vacated.

Vacated in part and affirmed.

SCOTT, P.J., and STOUDER, J., concur.