THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY MOMAN, Defendant-Appellant.

First District (1st Division)   No. 1—86—3452

Opinion filed June 29, 1990.

294

296

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Laurie N. Feldman, Special Assistant State's Attorney, and Inge Fryklund and Renee Goldfarb, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Anthony Moman (defendant), John Crockett, and Delecta Upshaw were charged with armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2). Prior to trial, the trial court severed Upshaw's case from Crockett's and defendant's, and defendant and Crockett were subsequently tried by a single jury. Defendant appeals his conviction and 12-year-imprisonment sentence, contending that (1) he was denied a fair trial by the introduction of a codefendant's out-of-court confession and testimony relating to a confession given by another nontestifying accomplice; (2) the trial court erred in denying his motion to suppress statements because he was not adequately informed of his *Miranda* rights; (3) he was denied a fair trial by improper prosecutorial remarks regarding defendant's consultation with his attorney; (4) he was denied a fair trial by the admission of evidence of other crimes; (5) he was denied a fair trial by the prosecutor's failure to disclose certain information in discovery regarding defendant's confession; (6) he was denied a fair trial by certain prosecutorial comments made during closing argument; (7) he was denied a fair trial where the court failed to admonish the jury to refrain from discussing the case; (8) the trial court violated his constitutional right to be free from compelled self-incrimination at the sentencing hearing; and (9) he was denied a fair trial by the cumulative effect of the trial errors.

We affirm.

In the evening of July 9, 1985, 62-year-old Walter Wilkerson, employed as an operator at General Telephone Electric (GTE) in

Northlake, Illinois, drove home after completing the 2 to 10:30 p.m. shift at GTE. Wilkerson parked his car in his mother's garage, located at 8158 South Vernon Street in Chicago, and thereafter proceeded to walk the one block to his home. While walking north on the west side of Vernon Street, Wilkerson observed two black men, whom he later identified as Crockett and Upshaw, exit a car parked on the east side of the street and cross the street.

Crockett and Upshaw walked a few feet behind Wilkerson. Wilkerson heard them discuss the location of an address and observed them walk toward a building each time he would pause. A third person then appeared in front of Wilkerson at approximately a one-foot distance, pointed a nickel-plated pistol at his head, and stated, "Punk, don't move." Crockett and Upshaw grabbed Wilkerson, one on each side of him, and wrestled him to the ground. The gunman ripped off the left leg of Wilkerson's trousers, took a wallet containing more than $400 from the pocket, and stated, "I got it." The three individuals then fled around the corner. Wilkerson subsequently called the police and gave them a report upon their arrival at his home.

Police arrested Crockett and Upshaw on July 19, 1985, and defendant was arrested on July 20, 1985. Defendant, Crockett, and Upshaw participated in a lineup conducted on July 21, 1985, from which Wilkerson identified Crockett and Upshaw as perpetrators of the crime.

Prior to defendant and Crockett's trial, defendant presented numerous motions to the trial judge. The trial judge denied defendant's motion to quash arrest and suppress statements for lack of probable cause to arrest him, denied his motion to suppress statements on grounds of involuntariness and failure to comply with *Miranda* requirements, denied his motion for severance from codefendant Crockett on grounds that their defenses were antagonistic and that Crockett's statements implicated him, denied his motion to redact the references to him in Crockett's statement, although it granted his motion to redact references to other crimes in the statements, and denied his motion to bar the State from impeaching him with a 1981 robbery conviction.

At trial, following Wilkerson's testimony regarding the July 9 incident, Chicago police captain Thomas Faragoi testified regarding the July 19, 1985, arrests of Crockett and Upshaw. At 3:30 a.m. on July 19, he observed four individuals inside a 1970 blue Chevy parked at an all-night gas station. He followed the car in his marked squad car to 79th and Ashland Avenue to obtain its license plate number, which was "Illinois ZRI 194." Over defendant's objection, Faragoi testified

that his attention was drawn to the car because he had heard four or five days earlier that a car fitting that description and bearing license plate number ZR 1194 was being sought in connection with an armed robbery. Faragoi stopped the car, and the driver and the front passenger fled when he attempted to apprehend the occupants. Faragoi arrested Crockett and Upshaw, the back seat passengers.

Prior to the testimony of Chicago police detective Ray Madigan concerning his interview with Crockett and Upshaw at the police station on July 19, 1985, the trial judge denied defendant's motion that the court instruct the jury to give "separate consideration" to each defendant because the jury had been instructed on three prior occasions to this effect and would later be instructed at the close of the case.

Madigan testified that he interviewed Crockett and Upshaw for approximately three hours on July 19 about matters other than the Wilkerson robbery. On the following day, July 20, 1985, Madigan and his partner, Detective Daniel McWeeney, searched for defendant and Darryl Love. The officers found defendant and an individual named Andre Collins at 56th Street and Calumet Avenue. Both individuals fled upon noticing the officers. Defendant fell and was apprehended by McWeeney, but Collins escaped. Madigan stated that he read defendant his *Miranda* warnings, and defendant was thereafter taken to the police station.

Madigan further testified that he again read defendant his *Miranda* warnings in a police interview room before he and McWeeney had a 45-minute conversation with defendant regarding matters other than the Wilkerson robbery. Madigan then spoke with Crockett about the Wilkerson case and other matters for a three-hour period. Madigan subsequently had a conversation with defendant regarding matters other than the Wilkerson case. Afterwards, defendant was taken to the lockup.

Madigan stated that lineups were conducted on July 21 at approximately 11 a.m. Nine individuals participated in the lineup, including defendant, Crockett, and Upshaw. Madigan was present when Wilkerson identified Crockett and Upshaw, as well as when Assistant State's Attorney Patrick McNerney interviewed Crockett and Assistant State's Attorney Diane Romza interviewed Upshaw. Madigan was also present later when McNerney took a court-reported statement from Crockett. Over defendant's objection, Madigan testified that Upshaw also gave a court-reported statement.

Madigan testified that he was again present at approximately 4:30 p.m. when Romza read defendant his *Miranda* rights and defendant

agreed to make an oral statement. Defendant stated that on July 9 he was in a Chevy with "Dirk, Hook, and John." Defendant identified Dirk as Darryl Love, Hook as Delecta Upshaw, and John as John Crockett. Defendant stated that Dirk was in the front seat with a gun, that Hook and John were in the back seat, and that he was driving the car. They were looking for somebody to rob. They drove past an old man, continued one block farther down, at which point Hook, Dirk and John exited the car. The three robbed the old man and returned to the car with $400 to be divided equally amongst them.

Madigan testified that following defendant's statement, Madigan returned to the interview room where Crockett was located and was present when McNerney reviewed Crockett's statement with Crockett. McNerney, defendant, and Madigan each initialed each correction made, including the addition of "Amp" as the driver, and each signed the statement.

On cross-examination, Madigan stated that he did not instruct the lockup keeper to take defendant to the hospital, that defendant fell onto his knees before he was apprehended but he did not indicate this fact in the police report, and that he did not observe any injuries on defendant. Madigan also admitted that the police reports contained no details as to defendant's oral statements, indicating only that defendant admitted to a robbery. Madigan further stated that defendant did not mention a date, time or place of the incident described in his oral statement.

On redirect examination, over defendant's objection, Madigan read from his police report as to a "[c]ourt reported statement from both Crockett and Upshaw, implicating *** [defendant]. [Defendant] made admission to robbery as well." Following defendant's motion for a mistrial, the court instructed the jury that the purpose of the evidence was to show that a report was in fact filed with a mention by this officer that the defendant made a statement and that it was not offered for the purpose of the truth of the report or statements made therein.

Romza testified over defendant's objection that she took a court-reported statement from Upshaw on July 21 prior to interviewing defendant. She then interviewed defendant, first identifying herself as a prosecutor and working for the police, and then advising defendant of his *Miranda* rights from a printed form. Defendant agreed to make an oral statement, but refused to sign a written statement or make a court-reported statement. Romza testified to the oral statement given by defendant consistent with Madigan's testimony, adding that defendant admitted the incident occurred at 81st and Vernon Streets

and that defendant was aware that one of the others had a gun and they would take the victim's money. Romza further testified that defendant looked "fine," did not complain of any injury, and received food, a beverage and a trip to the washroom.

McNerney testified that he interviewed Crockett in Madigan's presence. He advised Crockett of his *Miranda* rights and of his status as an assistant State's Attorney working with the police. Crockett made an oral statement and a court-reported statement. The court reporter subsequently took a statement from another defendant and then typed Crockett's statement. Crockett thereafter made corrections on the statement.

Before McNerney read Crockett's statement to the jury, the trial court denied defendant's request to redact from Crockett's statement that "Amp" was the driver and that defendant was "Amp." The trial judge did require the State to redact the fact that defendant was the other individual who fled from the car stopped by Faragoi on July 19, 1985, and statements suggesting other armed robberies committed by Crockett.

McNerney read Crockett's statement to the jury, which included the following: Crockett admitted that on July 9, 1985, just before midnight, he was riding in a car with "Amp," who was the driver, "Dirk" and "Hook." Defendant was known as "Amp." They observed an old man drive a car into a garage, enter and exit a house, and walk down the street. As a "front," they discussed the location of an address. They approached the old man and announced a stickup. The man ran but tripped. Crockett and Dirk grabbed the man. Hook, holding a gun, stood up over the man. Crockett tore the man's pants and took $385 to $390 from his pockets. They ran and divided the money, with each receiving $100, including the driver. On July 19, 1985, Crockett was driving when police stopped his car. Dirk jumped out of the car and ran. Crockett acknowledged that no promises were made to him at the police station, that he was given coffee and cigarettes and was permitted to use the washroom; and he stated that the gun he had "then" was a .38 caliber which "[w]e took *** off of an old man."

Defendant and Crockett both testified at trial.

Crockett testified that at midnight on July 9, 1985, he was at his apartment at 5630 South Calumet Street with Laquedia Brown and Shonda Fullilove. After the three played "Mastermind" until 10 p.m., both women spent the night. Crockett denied robbing Wilkerson that night. On July 19, 1985, he was arrested while parked in a blue Nova at 77th and Marshfield Streets. Over defendant's objection, the State inquired into whether defendant was the driver, to which Crockett re-

sponded "no." Also over defendant's objection, the State asked Crockett whether he knew defendant, to which Crockett responded that he knew defendant now, but did not know him well at the time of the offense. Crockett further stated that he gave the court-reported statement because the police had beaten him and threatened to "pin" a murder on him if he did not confess to the Wilkerson robbery.

On cross-examination, defendant's counsel elicited testimony from Crockett that Crockett did not know defendant's name when arrested, that the police wrote into the statement that "Ant" was the driver, and that he never said that "Ant" or defendant was the driver.

Defendant testified that he had a 1981 robbery conviction, to which he had pled guilty, but he did not plead guilty to the charge on trial because he was innocent. On July 20, 1985, he was arrested at approximately 11 a.m. He ran at first, but stopped because he had no reason to run. He did not fall. When apprehended by McWeeney, he was handcuffed to the fence, then taken in an unmarked car and beaten with a flashlight and fist. He was later taken to the hospital with swollen knees, stomach pains and nausea. He was permitted to call his mother while at the hospital, and then returned to the police station. Defendant did not give the statement reported by Romza, but did state some of the things, as instructed by McWeeney, because he was afraid that McWeeney would beat him again. Romza was the first to advise him of his rights. He refused to give a court-reported statement because he did not want to lie again. Defendant denied participating in the crime against Wilkerson.

In rebuttal, the lockup keeper on duty on July 20, 1985, testified that both defendants made phone calls while in custody, neither complained of mistreatment, and both looked "fine." Defendant requested to go to the hospital because he had a problem with his stomach and did not feel well. Smith testified that, according to common procedure, a suspect is taken to the hospital whenever the suspect so requests.

McWeeney testified in rebuttal that defendant tripped and fell at the time of his arrest and that he did not beat or threaten defendant.

On appeal, we initially address defendant's contentions relating to the circuit court's denial of his motion to sever his case from Crockett's, the admission of Crockett's out-of-court confession, and the admission of State witnesses' testimony concerning Upshaw's confession. Defendant argues that the circuit court's ruling and the admission of this evidence violated his sixth amendment confrontation rights, Illinois evidentiary law, and Illinois case law regarding severance.

Defendant contends that the admission of testimony from State witnesses concerning Upshaw's statement violated his sixth amendment confrontation rights as set forth in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. In *Bruton*, the Supreme Court held that a defendant's sixth amendment right to cross-examination would be violated by introduction in a joint trial of a nontestifying accomplice's statement which implicates the defendant, even where limiting instructions are given to the jury. Although Upshaw's confession was not admitted at defendant's trial, defendant argues that his confrontation rights were violated when the jury was made aware that Upshaw had made a statement implicating him.

■ The record demonstrates that State witnesses made several references to the fact that Upshaw had made a court-reported statement during testimony regarding the chronology of events during the 30-hour police investigation. These references were proper to explain the steps taken by police in the investigation and to rebut the defense implication that Crockett and defendant were coerced into falsely confessing. It has been repeatedly held that where the substance of a conversation is not revealed, an officer may properly testify concerning investigatory procedures, even though the jury could reasonably infer therefrom that the accomplice implicated the defendant. *People v. Gacho* (1988), 122 Ill. 2d 221, 248, 522 N.E.2d 1146, 1159; *People v. Johnson* (1987), 116 Ill. 2d 13, 24, 506 N.E.2d 563, 568; *People v. Buckner* (1984), 121 Ill. App. 3d 391, 397, 459 N.E.2d 1102, 1107; *People v. Dixon* (1982), 105 Ill. App. 3d 340, 347, 434 N.E.2d 369, 376.

Defendant, though, refers us to testimony by Officer Madigan and Assistant State's Attorney Romza, wherein direct references were made that Upshaw had implicated defendant in his statement. While Romza's testimony that "[defendant] had been implicated as a participant in the armed robbery of Walter Wilkerson" does not directly indicate that Upshaw implicated defendant in his confession, Madigan's testimony does directly indicate such. In an attempt to rehabilitate Madigan's testimony that he made no notes concerning defendant's interrogation, the State had Madigan read the following from his report over defendant's objection: "Court reported statement from both Crockett and Upshaw, implicating *** [defendant]. [Defendant] made admission to robbery as well."

The outcomes in the above-cited cases, which involve indirect suggestions that an accomplice implicated the defendant, turn on whether the substance of the statement has been elicited; where the content of the statement is not revealed, courts find no confrontation violation.

(See *People v. Rivera* (1986), 145 Ill. App. 3d 609, 624, 495 N.E.2d 1088, 1098-99.) We see no distinction between the cases finding no error where an inference that an accomplice implicated the defendant is drawn from testimony regarding the chronology of police activity and the direct testimony to that effect in the instant case. The remark that Upshaw had implicated defendant did not reveal the corroborating details or any of the content of the confession. The statement was not offered for its truth, and the statement revealed only what was already indirectly disclosed from the testimony regarding the chronology of the police activity. The only case cited by defendant where a court found a confrontation violation from direct references that a nontestifying codefendant implicated the defendant, *People v. Campbell* (1983), 115 Ill. App. 3d 631, 635, 450 N.E.2d 1318, 1322, did not discuss the above Illinois case law and emphasized that the prosecutor's repeated remarks in closing argument, over repeated admonishments from the trial court, were calculated to urge the jury to convict defendant because the accomplice had incriminated him in the robbery. We find *Campbell* distinguishable from the isolated remark made by the witness here.

■ Turning to the admission of Crockett's confession at trial, no sixth amendment confrontation violation occurred by the introduction of Crockett's confession because Crockett testified at trial and was subject to cross-examination by defendant's counsel. (*Bruton*, 391 U.S. at 136, 20 L. Ed. 2d at 485, 88 S. Ct. at 1628; *Nelson v. O'Neil* (1971), 402 U.S. 622, 627, 29 L. Ed. 2d 222, 227, 91 S. Ct. 1723, 1726-27 (confirming *Bruton*'s intimation that a defendant's confrontation rights are violated "only where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination" and finding no *Bruton* violation even though the testifying codefendant denies making the out-of-court statement).) Nevertheless, defendant argues that we should not consider the fact that Crockett testified at trial because the trial court erred in denying his pretrial motion to sever his trial from Crockett's.

The trial court denied defendant's motion for severance on the basis of the post-*Bruton* plurality decision in *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, wherein the Court ruled that a defendant's sixth amendment rights would not be violated by the introduction, with limiting instructions, of a codefendant's confession implicating the defendant where the confessions are interlocking. *Parker*'s plurality holding has since been overruled by the United States Supreme Court in *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714.

■ Defendant relies on *People v. Carter* (1986), 145 Ill. App. 3d 985, 988, 496 N.E.2d 1206, 1208, to support his position that courts of review, when considering a trial court's decision on a pretrial motion, do not consider subsequent happenings at trial. We believe that the State correctly interprets the case from which the *Carter* language stems, *People v. Yonder* (1969), 44 Ill. 2d 376, 256 N.E.2d 321, to mean that a reviewing court will not look to trial events to second-guess a trial court's denial of a severance motion where a defendant has made insufficient allegations of prejudice prior to trial. (See *Yonder*, 44 Ill. 2d at 386, 256 N.E.2d at 327.) In the instant case, we find no basis for overlooking the fact that the codefendant was subject to full and effective cross-examination at trial. A contrary finding would effectively eliminate any harmless error analysis from reviews of denials of severance, contrary to the numerous decisions invoking such analysis in severance cases. See, *e.g., People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161; *People v. Nunn* (1989), 184 Ill. App. 3d 253, 541 N.E.2d 182; *People v. Jones* (1988), 169 Ill. App. 3d 883, 524 N.E.2d 593; *People v. Smith* (1988), 172 Ill. App. 3d 94, 526 N.E.2d 849.

Defendant next contends that, even if a Federal confrontation violation did not result from the admission of Crockett's confession, the introduction of the confession violated Illinois evidentiary rules regarding hearsay statements. The State refutes defendant's assertion, arguing that Illinois courts follow the Federal case law in the sixth amendment area which have found that interlocking confessions may be admitted as direct substantive evidence against a defendant. Defendant responds that Illinois evidentiary law acts independently of the Federal constitutional analysis to forbid the admission in a joint trial of a hearsay statement of a codefendant implicating the defendant.

Federal case law in the sixth amendment area has evolved as follows with regard to interlocking confessions. In emphasizing both the inadmissibility of the codefendant's hearsay statement against defendant under traditional rules of evidence and the compounding of this unreliable evidence when the accomplice "does not testify and cannot be tested by cross-examination," *Bruton* intimated that the inadmissibility of the codefendant's confession against the defendant is a prerequisite to finding a sixth amendment confrontation violation. (*Bruton*, 391 U.S. at 136, 20 L. Ed. 2d at 485, 88 S. Ct. at 1628.) In *Lee v. Illinois* (1986), 476 U.S. 530, 543, 90 L. Ed. 2d 514, 527-28, 106 S. Ct. 2056, 2063, the Court further indicated that, even where the hearsay evidence does not fall within a firmly rooted hearsay ex-

ception, the confrontation clause would not be violated by an unavailable codefendant's confession that has an "independent indicia of reliability" to overcome the presumption of unreliability placed upon an accomplice's incriminating confession. *Lee* suggested that interlocking confessions may provide the independent indicia of reliability required to overcome the presumption of unreliability of an accomplice's confession:

> "Obviously, when codefendants' confessions are identical in all material respects, the likelihood that they are accurate is significantly increased. \*\*\* If those portions of the codefendant's purportedly 'interlocking' statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment. In other words, when the discrepancies between the statements are not insignificant, the codefendant's confession may not be admitted." (*Lee*, 476 U.S. at 545, 90 L. Ed. 2d at 529, 106 S. Ct. at 2064-65.)

The Supreme Court, in *Cruz*, when it rejected *Parker's* analysis that interlocking confessions rendered cross-examination less than a constitutional imperative, confirmed *Lee*'s suggestion by stating that the fact that the confessions are interlocking may be relevant to whether the statement is of sufficient reliability to be admitted as direct evidence against defendant. *Cruz*, 481 U.S. at 193-94, 95 L. Ed. 2d at 172, 107 S. Ct. at 1719.

■ *Lee* recognized, however, that even if the confession meets the *"Lee* test" for admissibility under the sixth amendment analysis, State hearsay rules could act independently of the confrontation clause to preclude admission of codefendants' reliable confessions. (*Lee*, 476 U.S. at 539, 90 L. Ed. 2d at 525, 106 S. Ct. at 2061.) Focusing now on Illinois law, a well-established Illinois evidentiary rule is that an out-of-court statement of a codefendant made outside the presence of the defendant is hearsay which is not admissible as substantive evidence against the defendant. (*People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413; *People v. Tyner* (1964), 30 Ill. 2d 101, 195 N.E.2d 675; *People v. Bennett* (1987), 162 Ill. App. 3d 36, 515 N.E.2d 840.) Even if such a statement is not admitted substantively against a defendant, Illinois courts have recognized "from [very] early times" the statement is "very damaging" to the defendant if admitted at a joint trial even with limiting instructions because "it is very difficult for a juror to divest himself, under instructions, from the illegitimate

effect of such evidence." (*People v. Duncan* (1988), 124 Ill. 2d 400, 413, 530 N.E.2d 423, 430, citing *White v. People* (1876), 81 Ill. 333, 338; *People v. Sweetin* (1927), 325 Ill. 245, 252, 156 N.E. 354, 357; *People v. Johnson* (1958), 13 Ill. 2d 619, 624, 150 N.E.2d 597, 600; *People v. Skelly* (1951), 409 Ill. 613, 621, 100 N.E.2d 915, 919; *People v. Clark* (1959), 17 Ill. 2d 486, 491-92, 162 N.E.2d 413, 416.) Accordingly, unless an exception to the hearsay rule applied, Illinois courts, on grounds of fairness, have allowed admission of such statements at joint trials only reluctantly, only with proper limiting instructions, and only if the statements are cleansed of all references to a nondeclaring defendant. *Duncan*, 124 Ill. 2d at 414, 530 N.E.2d at 430; *Clark*, 17 Ill. 2d at 490, 162 N.E.2d at 416.

In arguing that Illinois evidentiary rules do not bar admission where the confession meets the *Lee* test for admissibility, the State cites numerous Illinois cases which have considered whether confessions are "interlocking" under *Lee* for purposes of determining the admissibility of a confession. (*E.g., People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172; *People v. Johnson* (1987), 116 Ill. 2d 13, 506 N.E.2d 563; *People v. Williams* (1990), 196 Ill. App. 3d 851; *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130; *People v. Gibson* (1987), 156 Ill. App. 3d 459, 509 N.E.2d 563 (*dictum*).) In these cases, however, either the issue of State evidentiary law was not raised or the court did not expressly address the issue.

Our research has disclosed two appellate court cases from the first district, *People v. Curtis* (1989), 190 Ill. App. 3d 207, 214, 546 N.E.2d 624, 628, and *People v. Collins* (1989), 184 Ill. App. 3d 321, 329, 539 N.E.2d 736, 741, which have examined the admissibility of confessions under Illinois evidentiary law separately from the examination of the reliability of the confessions under the sixth amendment analysis. In these cases, the fact that the interlocking confessions were deemed reliable and admissible for purposes of the sixth amendment confrontation analysis did not render the confessions admissible under Illinois evidentiary analysis.

Although our supreme court has stated, in another context involving the admission of nontestifying codefendants' statements, that "Illinois courts have *** approached the admissibility of *** [the] statements *** quite independently of the Federal constitutional doctrine underlying *** *Bruton*" and that the Illinois rule regarding the admissibility of such statements "has sufficient basis in the inherent authority of our courts to announce the law of evidence for the assurance of fair trials" (*Duncan*, 124 Ill. 2d at 413, 415, 530 N.E.2d at 429), it has not addressed whether an "interlocking" confession with

"sufficient indicia of reliability" under *Lee* would render the confession admissible under Illinois evidentiary law. Until our supreme court rules otherwise, we will follow the appellate courts in this district finding the fact that a confession is interlocking under *Lee* does not render the confession admissible under Illinois evidentiary analysis.

■ Our finding that it was error under Illinois evidentiary law to admit Crockett's confession at defendant's trial without redacting all references to defendant, however, does not dispose of the issue. We must next determine whether the error may be deemed harmless. Evidence was presented from the victim, who unequivocally testified to the details of the crime. Evidence was also presented that defendant confessed to his participation in the crime in the presence of a police officer and an assistant State's Attorney at the police station after being fully advised of his *Miranda* rights. Defendant's confession corroborated the details given by the victim in every detail. Defendant's prior felony conviction was admitted for purposes of impeaching defendant's testimony as to the forced fictitious confessions, and defendant has not raised this issue on appeal. We conclude the admission of the codefendant's statements to be harmless error, as the evidence submitted against defendant established his guilt beyond a reasonable doubt.

Defendant's final contention regarding the trial court's denial of his motion for severance is that the court committed reversible error because the severe disparity in proofs against defendant and Crockett denied him a fair trial. A severance is required, defendant points out, where any set of circumstances would deprive a defendant of a fair trial. (*People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349.) Defendant directs us to *People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247, wherein our supreme court noted the Federal case law which has recognized that disparity in " 'the quantity and type of evidence adduced against the co-defendants[ ] is a vital consideration in evaluating the necessity for severance' " due to concerns as to "whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in the light of its volume and limited admissibility." *Byron*, 116 Ill. 2d at 93, 506 N.E.2d at 1252, quoting *United States v. Sampol* (D.C. Cir. 1980), 636 F.2d 621, 646.

■ Defendant has not demonstrated that the type or volume of evidence introduced at the joint trial was such that the jurors could not be reasonably expected to compartmentalize the evidence as it relates to the separate defendants. Unlike *Sampol*, where the overwhelming bulk of the evidence related to the codefendants and bore no relevance to the less serious charges against the defendant,

defendant here was charged as an equal participant in the crime and the State admitted into evidence defendant's damaging detailed confession as to his participation in the crime. Furthermore, unlike *Byron*, where the court found the overwhelming volume of the evidence against the codefendant prejudiced the defendant "in view of the bitter antagonism" in the codefendants' defenses at trial, defendant has not indicated any other circumstances which would demonstrate the prejudicial effect of the different quanta of evidence here. Moreover, a defendant is required in his pretrial motion for severance to specifically demonstrate the prejudice of which he complains. (*Byron*, 116 Ill. 2d at 92, 506 N.E.2d at 1251.) Defendant here did not raise the issue of disparate evidence as a basis for severance in his pretrial motion for severance or in his post-trial motion.

Defendant next contends that the trial court erred in denying his motion to suppress his confession because Officer Madigan diluted defendant's *Miranda* rights by adding, "[y]ou may waive the right to advice of counsel and your right to remain silent and you may answer questions or make a statement without consulting a lawyer if you so desire." Defendant did not argue this "dilution of rights" theory at his pretrial motion to suppress hearing. In arguing that defendant has waived this claim, the State urges us not to follow *People v. Visnack* (1985), 135 Ill. App. 3d 113, 118, 481 N.E.2d 744, 747-48, which found the defendant's claim that police officers did not inform him of his attorney's presence and his intent to speak with him affected defendant's substantial rights and therefore the exception to the waiver rule applied. While we agree with the State's assertions that not all constitutional rights fall within the meaning of "substantial rights" (*cf. United States v. Frady* (1982), 456 U.S. 152, 71 L. Ed. 2d 816, 102 S. Ct. 1584) and that *Miranda* is a prophylactic rule (see *New York v. Quarles* (1984), 467 U.S. 649, 81 L. Ed. 2d 550, 104 S. Ct. 2626), we believe that the defendant's claim involves substantial constitutional rights and therefore find the waiver exception applicable here.

As to the merits of defendant's claim, defendant asserts that, under *Miranda*, a suspect must be made "acutely aware that he is faced with a phase of the adversary system." (*Miranda v. Arizona* (1966), 384 U.S. 436, 469, 16 L. Ed. 2d 694, 721, 86 S. Ct. 1602, 1625.) He analogizes the officer's statement here to that found improper in *Commonwealth v. Singleton* (1970), 439 Pa. 185, 189, 266 A.2d 753, 755, where the officer suggested that the suspect had something to gain from making a statement to the police by including that the defendant's statement may be used "for or against" him. He further analogizes the "mixed signals" given by the officer here to those in

*Eagan v. Duckworth* (7th Cir. 1988), 843 F.2d 1554, and *United States ex rel. Williams v. Twomey* (7th Cir. 1972), 467 F.2d 1248, where included in the warning of defendant's right to counsel was the statement that the defendant could only receive appointed counsel if and when he went to court. *Duckworth* has recently been reversed by the Supreme Court in *Duckworth v. Eagan* (1989), 492 U.S. 195, 106 L. Ed. 2d 166, 109 S. Ct. 2875, wherein the Court stated that "[r]eviewing courts *** need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Duckworth*, 492 U.S. at 203, 106 L. Ed. 2d at 177, 198 S. Ct. at 2880, quoting *California v. Prysock* (1981), 453 U.S. 355, 361, 69 L. Ed. 2d 696, 702, 101 S. Ct. 2806, 2810.

■ Without examining *Duckworth*'s effect on the *Commonwealth* decision, we find the warnings given here are distinguishable from those in *Commonwealth* in that defendant here was first apprised of the consequences of speech and only then informed of a right to choose between speech and silence. In addition, the statements here followed the officer's recitation of the essential *Miranda* warnings and were succeeded by unchallenged *Miranda* warnings given by the assistant State's Attorney. Under these circumstances, we conclude that the warnings given by the officer reasonably conveyed to defendant his *Miranda* rights.

Defendant next contends that he was denied due process when the prosecutor, in eliciting from defendant that he had attended a conference with his attorney and Crockett immediately preceding defendant's testimony and emphasizing the fact in closing argument, improperly commented on defendant's sixth amendment privilege in order to penalize him for exercising this constitutional right. Defendant did not object to the prosecutor's cross-examination at trial, and he failed to raise the matter in his post-trial motion. Nonetheless, he argues that the plain error exception to the waiver rule should apply here.

On cross-examination of defendant, the prosecutor inquired as follows:

"Q. Okay. Now, immediately before you testified here today, we had a little bit of a break, didn't we?

A. Yes, sir.

Q. And the Judge and jury also left the courtroom, didn't they?

A. Yes, sir.

Q. And you left the courtroom, too, right?

A. Yes.

Q. You went into a conference room into the back, didn't you?

A. Yes, sir.

Q. Tell the jury who else was in that room.

A. Me, John Crockett, [Crockett's counsel] and [defendant's counsel].

Q. And that was right after John Crockett's testimony finished, wasn't it?

A. Yes, sir.

Q. And the four of you were back there for about five minutes?

A. Yes.

Q. And then you came out here and you began your testimony, isn't that right?

A. Yes, sir."

In closing argument, the prosecution stated: "Did [defendant] look like he was telling the truth, or did [defendant] look like he was rehearsed? Did he look like he got it down pat? A couple questions I asked at the time: Mr. Moman, Friday afternoon, just before you testified, where did you go? We took a recess. Where did you go? Went back to the conference room in the back. Who was present? John Crockett, his lawyer, my lawyer and me. What was that all about?"

Defendant cites *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 405 N.E.2d 1306, and *People v. Taylor* (1987), 153 Ill. App. 3d 710, 506 N.E.2d 321, as supporting his argument that the above inquiry and remarks constituted plain and reversible error. The State distinguishes these cases on the ground that the prosecutors in those cases argued that defendant's consultation with counsel demonstrated cognizance of guilt, whereas the prosecutor here attempted to show that defendant and his codefendant fabricated their united defense of police coercion.

*Meredith* and the Federal cases cited therein establish that it is improper to penalize a defendant for exercising his sixth amendment right to counsel through prosecutorial comment:

" '[There are] no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution.' " (*Meredith*, 84 Ill. App.

3d at 1073, 405 N.E.2d at 1312, quoting *Grunewald v. United States* (1957), 353 U.S. 391, 425-26, 1 L. Ed. 2d 931, 955, 77 S. Ct. 963, 984-85 (Black, J., concurring).)

Contrary to the State's assertion that the remarks here merely referred to defendant's meeting with his codefendant, the remarks clearly included defendant's consultation with his attorney. We have considered the cases cited by the State to support its argument regarding the propriety of the comments here, but find them distinguishable. *People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77, and *People v. Stewart* (1973), 12 Ill. App. 3d 226, 297 N.E.2d 391, did not involve a defendant's constitutional right to counsel since the challenged remarks related to defense witnesses other than the defendant. The court, in *People v. Kitchen* (1977), 53 Ill. App. 3d 521, 529, 368 N.E.2d 528, 535, found that the prosecutor's comments there did not charge that defendant was coached by his counsel, but rather referred to the defendant's personal decision to testify in his own defense in order to correct any inconsistencies between the codefendant's testimony and his attorney's opening statement.

■ Although the prosecutor's remarks were improper because they penalized defendant for consulting with his attorney, we find that the remarks do not give rise to invocation of plain error doctrine and that the references are not so prejudicial as to require a new trial. The remarks here are not as prejudicial as those which suggested that only a guilty person would contact an attorney in *Meredith* and *Taylor*. The instant case is more analogous to *People v. Kerans* (1982), 103 Ill. App. 3d 522, 531, 531 N.E.2d 726, 733, where the court found to be harmless error the prosecutor's remarks that defendant was able to sit back at trial and listen to all the other testimony while he "was right in the attorney's ear" and "then weave a story as best he could."

Defendant also contends that the compounding prejudicial effect of several references to other crimes denied him a fair trial. The State argues that, other than the proper admission of defendant's prior armed robbery conviction, no evidence was introduced connecting defendant to other crimes and that every effort was made at trial to redact references to the other crimes.

■ Defendant directs us to evidence adduced purportedly in contravention of the pretrial agreement forbidding the State from introducing evidence of other pending armed robbery charges and requiring the redaction of references to other crimes in Crockett's confession. Defendant first refers to Officer Faragoi's testimony concerning a radio broadcast of an armed robbery he heard five days be-

fore he apprehended Crockett and Upshaw in a car bearing a license number similar to the one on the car used in the armed robbery referred to in the radio broadcast. Faragoi's testimony did not prejudice defendant because the record does not establish that the other armed robbery could have been linked to defendant. (See *People v. Rahn* (1973), 15 Ill. App. 3d 170, 304 N.E.2d 161, *rev'd on other grounds* (1974), 59 Ill. 2d 302, 319 N.E.2d 787.) Faragoi did not identify defendant as the fourth person who fled from the car connected to the other armed robbery, and Crockett, upon the prosecutor's inquiry, denied that defendant was in the car at the time of Crockett's arrest. Furthermore, the radio broadcast in issue was made five days after the armed robbery for which defendant is on trial.

■■■ Defendant next refers to a portion of Crockett's court-reported statement which he claims revealed to the jury that the gun taken in the Wilkerson robbery was taken from another robbery. Following a series of questions regarding the police's treatment of Crockett at the police station on the day of his arrest, the prosecutor elicited the following from Crockett:

"Q. In fact, when you have been in the interview room, you weren't handcuffed?

A. For a short while, but then, you know they took the handcuffs off.

Q. And what type of gun did you have then?

A. A .38.

Q. Where did you get the .38?

A. We took it off of an old man.

Q. And it was none of the old men that we have talked about, is that right?

A. No."

The gun Crockett had in his possession "then" refers to the gun in his possession at the time of his arrest, not at the time of the Wilkerson robbery. The reference, therefore, did not connect defendant to the other crime mentioned. Moreover, defendant has waived our review of this claim by failing to object when the trial court, which had placed the responsibility on counsel to make further redactions, specifically inquired of defense counsel shortly before the confession was read to the jury regarding the necessity of any further redactions.

■■■ Defendant's final claim concerning other crimes evidence is that he was prejudiced by the trial court's denial of his pretrial motion to exclude his 1981 armed robbery conviction as impeachment evidence and the subsequent admission of the conviction at trial. Only crimes punishable in excess of one year or involving dishonesty or

false statement may be used for impeachment purposes if the trial judge determines that the probative value of the prior conviction outweighs the danger of unfair prejudice (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688; *People v. Smith* (1980), 88 Ill. App. 3d 897, 410 N.E.2d 973.) A trial court is given wide latitude in determining whether the probative value outweighs the danger of unfair prejudice. *Tribett*, 98 Ill. App. 3d at 678.

■■■ Defendant maintains that the trial court abused its discretion in allowing admission of the impeachment evidence because, in light of the references to other crimes discussed above, the potential prejudicial effect of this similar prior crime outweighed any probative value of the evidence. As previously demonstrated, the references to other crimes did not connect defendant to those crimes. As to the similarity of defendant's prior conviction to the instant charge, similarity is a factor to consider in weighing the prejudicial effect against its probative value due to the potential inference of guilt to be drawn from the evidence, but it does not dictate its exclusion. (*Tribett*, 98 Ill. App. 3d at 676, 424 N.E.2d at 697; *People v. Blair* (1981), 102 Ill. App. 3d 1018, 1026, 429 N.E.2d 1375, 1381.) The trial court here did not abuse its discretion in finding the probative value of the conviction outweighed any prejudicial effect where the conviction was relatively recent to the instant charge and where the robbery conviction bore on defendant's veracity, which he squarely placed in issue. See *People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588; *People v. Burba* (1985), 134 Ill. App. 3d 228, 236, 479 N.E.2d 936; *People v. Hancock* (1982), 110 Ill. App. 3d 953, 955, 443 N.E.2d 226, 228.

Defendant's next contention is that the admission of testimony from State witnesses that defendant identified "Dirk," "Hook" and "John" as Love, Crockett, and Upshaw in his oral confession, where the State had only disclosed defendant's references to "Dirk," "Hook" and "John" in its response to defense discovery request, violated Supreme Court Rule 412(a)(ii) (107 Ill. 2d R. 412(a)(ii)) and constituted reversible error. The parties initially dispute whether defendant is estopped from raising the argument because his written discovery motion requested only a "written summary" of any oral statements made by defendant. It is not necessary that we resolve this dispute because we find that the State's failure to disclose these details did not constitute reversible error.

■■■ Supreme Court Rule 412(a)(ii) requires the State to disclose to the accused "the substance of any oral statements made by the accused." (107 Ill. 2d R. 412(a)(ii).) It was promulgated to protect a defendant against surprise, unfairness, and inadequate preparation

and to afford the defense an opportunity to investigate the circumstances surrounding the statement. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 172, 514 N.E.2d 970, 974.) A new trial is only required where the State fails to comply with the discovery requirements when the defendant is prejudiced by the discovery violation and the trial court fails to eliminate the prejudice. *Cisewski*, 118 Ill. 2d at 172, 514 N.E.2d at 974; *People v. Weaver* (1982), 92 Ill. 2d 545, 560, 442 N.E.2d 255, 260.

■■■ Unlike the cases referred to us by the parties, *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255, and *People v. McInnis* (1980), 88 Ill. App. 3d 555, 411 N.E.2d 26, the State in the instant case disclosed the critical statements which incriminated defendant in the crime. The trial court here properly found that the challenged details simply clarified the obvious—that defendant knew to whom he referred and that the police were also aware that he meant Crockett, Upshaw, and Love since Crockett had revealed the same in his recorded confession. Thus, the State sufficiently complied with Rule 412(a)(ii).

In any event, defendant has not demonstrated any prejudice which would require a reversal. In determining whether a new trial is warranted due to a discovery violation, courts are to consider the closeness of the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice could have helped the defense discredit the evidence. (*Cisewski*, 118 Ill. 2d at 172, 514 N.E.2d at 974.) The prejudice to which defendant refers is that the details further enhanced the reliability of his oral confession by "interlocking" his confession further with Crockett's court-reported statement. Defendant, however, does not contend that he did not previously know the identity of Hook and Dirk, nor does he indicate how he could have benefited by the prior disclosure of this detail.

■■■ Defendant next refers us to numerous prosecutorial comments in closing argument which, he contends, were improper and denied him a fair trial. In reviewing these comments, we are mindful that prosecutors are afforded great latitude during closing argument (*People v. Morrison* (1985), 137 Ill. App. 3d 171, 484 N.E.2d 329), and that improper arguments are not reversible error unless they cause the jury to convict where it would otherwise have acquitted (see *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183; *People v. Sawczenko* (1989), 180 Ill. App. 3d 406, 535 N.E.2d 1105). Since our review of the record has revealed many of defendant's contentions to be without merit, only those contentions worthy of our review will be considered below.

■■ Defendant contends that the prosecutor encouraged the jury to lump the evidence against Crockett and defendant together and to consider Crockett's incriminating statements in the court-reported confession against defendant. In closing argument, the prosecutor argued: "What does the Defendant Crockett's statement tell you? That three people stuck him up, and that [defendant] was the driver of the get away car," as well as the argument "[a]ccording to John Crockett's statement, [defendant] was the driver of the getaway car." Defendant objected to the statements on the ground that separate consideration should be given to each defendant. The trial court, in stating "the jury will be so instructed," overruled defendant's objection. We do not believe the remarks are reversible error. The prosecutor did not argue that the jury should consider Crockett's statement against defendant, and any improper suggestion to this effect was cured by the court's prompt instruction, as well as by the numerous other instructions given to the jury in this regard throughout the trial.

Defendant also directs us to prosecutorial comments which he asserts suggested to the jury that police officers generally have more integrity than criminal defense lawyers and other witnesses and that the jurors should find the police more credible because, as citizens, the jurors depend upon the police. The State responds that the arguments were a proper response to defense counsel's closing argument in a case where the jury had to resolve a credibility battle between the police and defendants.

In closing argument, defense counsel attempted to construct the police officer's motive to lie by including remarks such as "[w]e like to believe that our police officers are out there to protect us *** just as in any other way of life, there are bad Americans, some bad people *** I regret to tell you ladies and gentlemen that is what we have here"; "[i]f any of you think a police officer is going to come and testify and admit to striking a prisoner in a police station, I want to sell you some real estate"; and "[i]f you think a police officer is going to come in here and tell you [they beat defendant], you are mistaken because they are not going to do that *** because it is a crime." In response, the prosecutor remarked: "[T]he police *** don't gain anything. *** [McWeeney and Madigan] are going to go out and they are going to catch people that did it and bring them to court. And when they get to court, lawyers like Mr. Diamond Falk and Mr. Simon are going to accuse them of beating defendants and making up evidence. *** And what did they get? They get a paycheck. If they don't go to court, they get the same paycheck."

■■■ While Illinois case law has held that it is improper to argue that a witness is more credible because of his status as a police officer (*People v. Rogers* (1988), 172 Ill. App. 3d 471, 526 N.E.2d 655; *People v. Richardson* (1985), 139 Ill. App. 3d 598, 487 N.E.2d 716; *People v. Ford* (1983), 113 Ill. App. 3d 659, 447 N.E.2d 564), the prosecutor's remarks here did not rise to the level of suggesting that the officers were more credible due to their police status, but were a proper response to defense counsel's attempt to discredit police witnesses in general.

The prosecutor, however, further stated to the jurors: "[W]hen you are looking for help *** you dial 911 [and] get the Chicago Police Department. You put your faith in these people. If you dial 911, next time I will wait for [defendant] and John Crockett to come around." We agree with defendant that these remarks were improper due to their proclivity to arouse fear in the jurors by implying that a not-guilty verdict would be tantamount to turning their backs on the persons upon whom they depend for protection. (See *People v. Threadgill* (1988), 166 Ill. App. 3d 643, 651, 520 N.E.2d 86, 90.) Nonetheless, we find these isolated comments, where the trial court sustained defendant's objection to the statements and instructed the jury to disregard the remarks and to base their decision on the evidence, did not prejudice defendant.

Defendant further refers us to the prosecutor's comments on defendant's failure to call certain defense witnesses. Defendant cites Illinois case law which provides that where a witness is equally available to the State, it is improper for the State to comment unfavorably on the failure of defendant to produce witnesses because such remarks unfairly tend to shift the burden of proof to the accused (*People v. Lee* (1984), 128 Ill. App. 3d 774, 782, 471 N.E.2d 567, 573; *People v. Nodal* (1980), 89 Ill. App. 3d 538, 541, 411 N.E.2d 1087, 1090), unless a defendant injects into the case the name of an alibi witness and then fails to call the witness (*People v. Lopez* (1987), 152 Ill. App. 3d 667, 678, 504 N.E.2d 862, 869; *People v. Wills* (1986), 151 Ill. App. 3d 418, 421, 502 N.E.2d 775, 777).

The State responds by arguing that defendant has waived objection to this area of argument by failing to raise it in his post-trial motion. As to the merits of defendant's argument, the State points out that Illinois case law conflicts on the propriety of commenting on a defendant's failure to produce evidence other than his own testimony or evidence in the State's peculiar control as long as such comment does not suggest that the defense bears any burden of proof. (See *People v. Albanese* (1984), 104 Ill. 2d 504, 522, 473 N.E.2d 1246,

1253; *People v. Williams* (1968), 40 Ill. 2d 522, 528, 240 N.E.2d 645, 649; *People v. Lion* (1957), 10 Ill. 2d 208, 216, 139 N.E.2d 757, 761.) Citing *People v. Ross* (1980), 89 Ill. App. 3d 128, 133, 411 N.E.2d 1187, 1190, the State further asserts that where the defendant undertakes to testify, his testimony is subject to the same scrutiny and comment as any other witness.

In issue are the following prosecutorial comments: "[Defendant] never told you he was someplace else, that he didn't do it"; "[i]f [defendant] was injured, his knees were swollen up, where is the doctor? *** The defense has the power to bring forth witnesses"; and "[i]f [the victim] was drunk, they could bring in evidence to prove it."

■■ Defendant did not specifically mention these remarks in his post-trial motion. He merely generally asserted that the prosecutor "shifted the burden of proof to [defendant]." It is established that, in raising an objection in a post-trial motion, the defendant must recite the specific improper remarks made by the prosecutor so that the court may make an informed ruling on his motion after being fully apprised of the specific instances of prosecutorial misconduct. (*People v. Smith* (1985), 139 Ill. App. 3d 21, 27, 486 N.E.2d 1347, 1350.) Because defendant failed to raise the alleged errors with sufficient specificity in his post-trial motion, the alleged errors are not preserved for our review. See *Smith*, 139 Ill. App. 3d at 27-28, 486 N.E.2d at 1350.

■■ Defendant also refers us to prosecutorial comments which he contends improperly shifted the burden of proof by urging the jurors to convict him even if the defense case left the jurors with a reasonable doubt. In rebuttal argument, the prosecutor remarked:

> "It is never easy to decide things one way or the other. But your decision right now is a very important one. You can, by your decision, say we know you are guilty. The State has proven you guilty. We do not have a reasonable doubt of your guilt. Sign the guilty forms for the defendants. Or you can say maybe you have raised enough dirt to confuse a few issues and maybe we have got doubt, therefore we are going to sign the not guilty forms. If you do that, you are telling John Crockett and [defendant] it is okay for them to do what they did."

Any confusion as to the proper burden of proof which may have arisen from these comments was diminished by the prosecutor's statement immediately prior thereto informing the jury of the State's proper burden of proof, by the trial court's prompt ruling sustaining defendant's objection to the comments, and by the trial court's instructions as to the State's burden before trial and before jury deliberations.

█ Addressing now the final two errors alleged by defendant, we find his contentions to be without merit. Defendant's contention that he was denied a fair trial by the trial court's failure to admonish the jury to refrain from discussing the case during the trial overlooks the fact that the court did instruct the jury to this effect prior to trial. Moreover, this court has refused to follow the Federal case upon which defendant relies, which had presumed prejudice from the failure to so admonish the jury. See *People v. Diaz* (1988), 169 Ill. App. 3d 66, 522 N.E.2d 1386.

█ Defendant's contention that his fifth amendment right to be free from compelled self-incrimination was violated when the court at sentencing elicited, and considered as aggravating factors, that defendant was not supporting his three children and that he had a serious daily alcohol problem fails because defendant did not invoke his fifth amendment rights or demonstrate a *compelled* incrimination.

In eliciting the above information, the trial court already had before it a presentence investigation report in which defendant had provided information concerning his illegitimate children living with his girl friend, his unemployment and financial dependence on his mother, and his drug and alcohol consumption. Defendant has never challenged his contributions to the presentence report; thus, he misplaces his reliance on *Estelle v. Smith* (1981), 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866, where the Supreme Court found that the State could not introduce the results of a compelled pretrial psychiatric examination at a capital sentencing hearing.

As to the additional information elicited from defendant at the sentencing hearing, the Supreme Court has stated that *Miranda* does not apply "outside the context of the inherently coercive custodial interrogations for which it was designed." (*Roberts v. United States* (1980), 445 U.S. 552, 560, 63 L. Ed. 2d 622, 631, 100 S. Ct. 1358, 1364.) The Supreme Court's comments in *United States v. Monia* (1943), 317 U.S. 424, 427, 87 L. Ed. 2d 376, 380, 63 S. Ct. 409, 410-11, are also noteworthy here: "The [fifth] amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment."

Neither defendant nor his counsel on defendant's behalf invoked defendant's fifth amendment privilege at sentencing. Nor has defendant demonstrated any judicial misconduct which would justify excusing defendant's failure to claim the privilege. See *People v. Tyner* (1964), 30 Ill. 2d 101, 105, 195 N.E.2d 675, 677 (waiver excused

where the judge accused a black witness of lying and called his conduct "typical of these people").

Finally, in view of our above findings on the issues raised by defendant, we reject defendant's contention that the cumulative effect of the trial errors requires that we grant him a new trial.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.