THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OTIS STEWART, Defendant-Appellant.

Fifth District No. 5—02—0427

Opinion filed July 30, 2003.—Rehearing denied August 25, 2003.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Bill Mudge, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Trent M. Marshall, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

Robert Mike and Otis Stewart grew up together in Alton, Illinois. Along the way, Stewart acquired the moniker "Chucky." That is how Mike referred to him throughout the trial. We will call him "the defendant."

The defendant, Robert Mike, and Patrick Thomas spent much of their January 7, 2001, evening at an Alton hangout called Club CTW. Mike and the defendant got into a heated argument at the club. We are not told what sparked the dispute.

Mike and Thomas decided to leave the defendant, and they departed to Mike's house. Thomas left Mike's house, but shortly after 3 a.m., he returned with the defendant. Mike greeted them at the door, thinking that the defendant had come to express his regret over his earlier conduct. Much to Mike's surprise, an apology was not

forthcoming. As the defendant and Thomas entered Mike's house, the defendant pulled a handgun and trained it on his old buddy. The defendant demanded money.

This rather bizarre turn of events was about to get even weirder. Mike convinced the defendant that Mike needed to look for money upstairs, and he departed the company of Thomas, the defendant, and the handgun for an upstairs sanctuary. When he got upstairs, Mike did not look for money. Instead, he picked up the telephone and summoned the police.

Mike stalled for time with the police en route. As he pretended to rummage for cash, he heard a gunshot. Thomas had been shot in the leg.

About the same time, the Alton police department, in the person of four separate officers, began to arrive in response to a possible home invasion in progress. Officer Brent Bertschi was the first to discover the defendant and a companion leaving the scene. When he ordered them to halt, they ran. The defendant fired off four rounds at Officer Bertschi as he fled.

Officer Shane Gibbs was standing near the defendant's route of flight. With his weapon drawn, he ordered the defendant to drop his gun. The defendant slowed his gait and started to point his gun in Officer Gibbs' direction. Officer Gibbs did not hesitate. He fired off two rounds at the defendant.

To everyone's good fortune, no one was able to hit his target. However, Officer Gibbs' gunfire kindled the defendant's attention. Shooting at police officers was obviously more to the defendant's liking than being shot at by them. He tossed his gun away and fell to the ground. The defendant was immediately arrested. The gun that he used to fire upon the police officers was found. So were spent cartridges scattered along the path of the defendant's flight from Officer Bertschi. Ballistics testing matched the cartridges to the gun.

The person who had been with the defendant when Officer Bertschi confronted them, and who had also run, got away.

The only witness to the aggravated battery, the victim, Thomas, initially refused to cooperate with the investigation. He later stated that Rico Long, not the defendant, was the man who had shot him. Thomas refused to testify at the trial. Neither side called him as a witness.

The defendant stood trial before a Madison County jury on charges of home invasion, aggravated battery with a firearm, and aggravated discharge of a firearm. The jury found him guilty of home invasion and aggravated battery and found him not guilty of aggravated discharge of a firearm. The defendant was sentenced to consecutive

prison terms. He currently serves his punishment of 35 years' imprisonment for having committed home invasion. When he completes that sentence, he must serve another 25 years' imprisonment for having committed aggravated battery with a firearm.

The defendant asks us to overturn his convictions and grant him a new trial, based upon prejudicial closing arguments tendered by the person who prosecuted him. He complains of two sets of arguments, the first of which he claims intended to convey an improper message that the defendant's acquittal would leave the Alton community and neighborhood vulnerable to additional violent crime. The defendant claims the second argument improperly envelops the jurors into the justice system as an integral part of the law enforcement team. He contends that the argument casts the jurors as the final part of law enforcement work and conveys the message that an acquittal would not be doing their part in support of that work. The defendant maintains that the remarks suggested that anything other than a guilty verdict would waste the fine efforts of law enforcement officers, prosecutors, and judges, all of whose efforts would stand for naught in the face of an acquittal.

Here is the first set of challenged closing remarks:

> "All of these people involved in this have got some problems. But it is the peace and dignity of the State of Illinois, and of that neighborhood in particular, that I want you to consider during your jury deliberations.
>
> * * *
>
> The thing that they [the police officers who testified at the trial] are just gunslingers, they just want a notch on their gun, well then maybe the next time somebody is in trouble in a case like this, you ought to call a plumber instead of a policeman. These are men that put their life [*sic*] on the lines.
>
> And Officer Bertschi's wife could be a widow today if this guy had been a bit luckier on his shooting."

None of these remarks were objected to when made. Nor did they form the basis of a claim of trial error in any part of the defendant's posttrial motion. Any error in their being made lays forfeit by this omission. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988). Moreover, a prosecutor's comments during closing argument will constitute reversible error only when the comments engender substantial prejudice against the defendant, raising a likelihood that the improper remarks, rather than the evidence as a whole, were a part of the reason a guilty verdict was reached. *People v. Kirchner*, 194 Ill. 2d 502, 549, 743 N.E.2d 94, 118-19 (2000). Even had this issue been properly preserved for review, the overwhelming evidence of the

defendant's guilt is far more likely the reason for the guilty verdict than any of the challenged comments.

Here is the second set of challenged closing remarks:

"You know in the West, when they used to play cards, playing poker, they would have a buck knife. And when it was your deal, they would put the buck knife in front of you, and as the deal passed, the buck would pass. That is how you get the phrase, what Harry Truman had on his desk, ['T]he buck stops here.[']

Well, during this investigation, the police had a duty to respond. And the buck knife was right in front of them. This was their job[;] they had to. Hostage, people shooting at me, I don't care. It is 4:00 [sic] in the morning[;] I want to go home[;] I'm going to have to go out and get shot at.

They did their duty. They collected the evidence. They collected all of the evidence that was necessary. Maybe we didn't do every possible test in the world, but why should you do all these tests when you have got absolutely[ ] positive, credible, uncontradicted testimony as to who shot the gun. There is no reason to do those tests.

Later on it became Detective Simmons' duty and the grand jurors' duty to do their job in this case. The buck knife was in front of them. They did their job.

After that, it became my job to marshal some of the evidence, to present the evidence. Mr. Daugherty comments in his argument that whether I do a good job or not[,] you should make your decision. That's not it[;] I hope I did a good job. If I didn't, don't hold that against the State. It was my duty to do that. The buck knife was in front of me.

Time and time the judge had to rule on the evidence. He did. The buck knife was in front of him. And even Mr. Daugherty had a job[—]the buck knife was in front of him to do what he could for his client.

But right now the buck knife is right here. Right in front of you twelve. And if you don't have the courage and the wisdom to convict this defendant on these counts, we are not going to have law and order. And what we are not going to have is peace and dignity in Alton."

These closing remarks came at the very end of the prosecutor's rebuttal closing argument. He budgeted a goodly amount of time to make them, despite the fact that they bore no relationship to any evidence or to any earlier arguments of counsel. The remarks were carefully crafted and were designed to divert thought away from the evidence, focus it upon law enforcement effort and performance of duty, and tie that effort and duty to what was expected of jurors when

it was their turn to perform. The argument passes the buck, enlisting patrolmen, detectives, grand jurors, prosecutors, and judges, all of whom performed their jobs admirably when duty called. The argument is a very persuasive exhortation to support law enforcement officials in their efforts rather than to decide the case upon the evidence presented. It implies that everyone who worked for a conviction would be betrayed in the absence of a guilty verdict. It also implies that the jurors have a duty to convict. Jurors are told that in the absence of courage and wisdom to convict, law and order cannot prevail and peace and dignity cannot be found.

The argument offers a sophisticated and insidious way to convey an improper message that a trial's outcome is the measure of a juror's support for righteous, effective law enforcement and its goals. See *People v. Threadgill*, 166 Ill. App. 3d 643, 651, 520 N.E.2d 86, 91 (1988); *People v. Moman*, 201 Ill. App. 3d 293, 317, 558 N.E.2d 1231, 1246 (1990); *People v. Montgomery*, 254 Ill. App. 3d 782, 795-96, 626 N.E.2d 1254, 1263 (1993). While prosecutors can certainly charge jurors to do their duty and to return guilty verdicts in accordance with the proofs, they are not at liberty to substitute emotion for evidence and blame jurors for handing us a lawless society in the event of an acquittal. They need to avoid telling jurors that their lack of courage and wisdom to convict someone of a crime will deprive a community of peace and dignity.

While jurors in this case did not need to know that law and order, in general, and the peace and dignity of the City of Alton, in particular, were both at stake in the trial of this defendant, we are not inclined to grant a new trial because of the arguments that were made. The foregoing argument was objected to at the trial, and the objection was erroneously overruled. However, the error was not properly preserved for review by allowing the trial judge an opportunity to address it in a posttrial motion. Trial errors that are not raised in a timely filed posttrial motion lay forfeit because of that fact. *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1129.

We decline the option of reviewing the arguments under the plain error doctrine because the evidence adduced at the trial did not present a close call. We are not concerned that the argument affected the outcome reached. The defendant did not tender much of a defense, with good reason. He had tried to escape the scene of the home invasion. His effort was so desperate that he actually fired upon policemen who demanded his surrender. The police found a smoking gun that the defendant tossed away in the process of capitulating to return gunfire.

The gun discharged the shell casings later found along the path of the defendant's flight. The evidence of guilt was indisputably strong.

For these reasons, we affirm.

Affirmed.

HOPKINS, P.J., and DONOVAN, J., concur.